## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

MAEGAN OLIVIA HALL

*Plaintiff*

CITY OF LA VERGNE, TENNESSEE,
BURREL "CHIP" DAVIS,
LEWIS POWELL, *and*
HENRY "TY" MCGOWAN

*Defendants*

Case No.

JURY DEMANDED

---

## COMPLAINT

Comes now the Plaintiff, MAEGAN OLIVIA HALL, by undersigned counsel, and for her Complaint would show as follows:

### Introduction

1.      Maegan Hall was a vulnerable and optimistic 24-year-old woman who had applied to be a police officer in the City of La Vergne. Where Ms. Hall sought role models at her new job, she instead found predators. In place of offering professional development, her supervisors and the Chief of Police groomed her for sexual exploitation. They colluded in using their authority to systematically disarm her resistance and entrap her in degrading and abusive sexual relationships, even sharing tips on the best ways to manipulate and exploit her. Maegan Hall felt trapped in the role assigned to her at the City of La Vergne Police Department and, in an attempt to escape, she nearly killed herself. Then, the City blamed her for everything. This lawsuit seeks justice for

Maegan Hall.

## Jurisdiction and Venue

2.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

3.     Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America and 15 U.S.C. § 6851.

4.     Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

5.     Plaintiff asserts claims for relief under 15 U.S.C. § 6851 which authorizes action to redress the nonconsensual sharing of intimate visual depictions through instrumentalities of interstate commerce.

6.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district and all defendants are residents of the State of Tennessee.  Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

2

## Parties

7.     Plaintiff Maegan Hall is an adult resident of Tennessee and a former junior officer at the City of La Vergne Police Department ("LPD"). Ms. Hall may be contacted through undersigned counsel to this complaint.

8.     Defendant Burrel Chip Davis is an adult resident of Tennessee and was the Chief of Police at the LPD at all times relevant to this Complaint.

9.     Defendant Henry "Ty" McGowan is an adult resident of Tennessee and was a Sergeant at the LPD.

10.     Defendant Lewis Powell is an adult resident of Tennessee and was a Sergeant at the LPD.

11.     Defendant City of La Vergne is a municipal government entity organized under the laws of the State of Tennessee and located in Rutherford County, Tennessee.

## Factual Allegations

12.     Plaintiff Maegan Hall is a woman and a graduate of Middle Tennessee State University with a bachelor's degree in Biology.

13.     In December 2020, Ms. Hall applied for a job with the LPD. She was 24 years old, 5'4" tall, and weighed approximately 135lbs.

14.     Part of the application process at LPD requires candidates to undergo a psychological evaluation.

15.     Ms. Hall expressed concern about the psychological evaluation to Sgt. Ty McGowan because Ms. Hall had a history of mental health problems including alcohol abuse, anxiety, depression, and self-harm.

16.     Sgt. McGowan told Ms. Hall the specific questions that would be asked and instructed her to lie about her history of mental health problems.

17.     Ms. Hall was hired by the La Vergne Police Department on February 9, 2021.

18.     Ms. Hall was assigned to the second shift at LPD.

19.     Ms. Hall was the only woman assigned to that shift throughout her employment with LPD.

20.     From the beginning of her employment, Ms. Hall experienced a workplace environment permeated with sexual innuendo and sexually explicit behavior, including but not limited to:

a) Male officers routinely discussing sexual preferences, sexual attractiveness, and sex acts they had performed on women;

b) A male officer describing to Ms. Hall's superior officer that he wanted to "take care of [Ms. Hall,]" that he would "eat [Ms. Hall] out," and that he would "fuck" Ms. Hall.

c) Two male officers shared with one another, within Ms. Hall's presence and while on duty, photographs of their penises.

d) Sgt. William Watson, on multiple occasions, made sexually suggestive comments to Ms. Hall. For example, in Spring of 2022, Sgt. Watson commented on Ms. Hall's tattoos and asked if she had any others. Ms. Hall responded that they were covered by her uniform. Sgt. Watson asked to see them, offered his personal number, asked to meet up off

duty, and offered to show her some workout moves (with obvious sexual innuendo).

21.     During her employment, Ms. Hall was groomed to engage in sexually exploitative activities by men in the department including Sgt. Powell, Sgt. McGowan, and Chief Davis.

22.     Sexual activity between a subordinate and superior within a bureaucratic hierarchy should be examined as a potential abuse of authority.[1]

23.     A superior officer in a bureaucratic hierarchy commits an abuse of authority by using the power of their office to pursue a sexual relationship with a subordinate, which is not a legitimate objective within the bureaucratic sphere.[2]

24.     "Sexual grooming is the process of deliberately establishing a connection with an individual in order to prepare that person for sexual exploitation and/or abuse."[3]

25.     Dr. Grant Sinnamon's model outlines seven stages of the grooming process:[4]

> a) **Selecting the victim.** Predators seek vulnerable targets in environments where the predators are likely to receive adoration, respect, and be seen as upstanding members of the community.  They

---

[1] Galia Schneebaum, *What is Wrong with Sex in Authority Relations? A Study in Law and Social Theory*, 105 J. CRIM. L. & CRIMINOLOGY (2015), pages 380-384.
https://scholarlycommons.law.northwestern.edu/jclc/vol105/iss2/2 (last accessed February 20, 2023)
[2] Id.
[3] See attached Exhibit 1: Grant Sinnamon, *The Psychology of Criminal and Antisocial Behavior*, Chapter 16 - *The Psychology of Adult Sexual Grooming: Sinnamon's Seven-Stage Model of Adult Sexual Grooming*, Editor(s): Wayne Petherick, Grant Sinnamon, Academic Press, 2017, Pages 459-487, ISBN 9780128092873, https://doi.org/10.1016/B978-0-12-809287-3.00016-X
https://www.sciencedirect.com/science/article/pii/B978012809287300016X (*last accessed Feb. 20, 2023*)
[4] Id.

exploit the inherent trust given to positions of authority and power where it can be very difficult for a target to perceive the behavior as anything other than genuine care and concern. People with psychological trauma are ideal targets.[5]

b) **Gathering information.** Once a sexual predator has selected their target, the next stage in the grooming process is the development of a personal relationship in order to identify their target's needs and vulnerabilities. The predator may seek to insert themselves as trusted authority figure within their target's environment and use that position to gather information and present themselves as a genuine friend in order to disarm their target.[6]

c) **Gaining Personal Connection.** Next the predator uses the information gained to engage with their target in "us only" information and activities designed to build trust, create intimacy, and blur the lines between what is and is not appropriate. Secrets are utilized by the predator to normalize nondisclosure of mutual activities. Environmentally, the predator seeks to make themselves increasingly seen as the "true friend" or the dedicated professional.[7]

d) **Meeting the Need and Establishing Credentials.** In this stage of the grooming and exploitation process, the predator secures their

---

[5] Id.
[6] Id. at 476.
[7] Id. at 477.

credibility in the eyes of their target by exploiting the information they have obtained and using it and their newly established personal connection to fulfill the identified need in their target. The predator may provide favors and benefits to their target in order to amplify codependence and instill in the victim a "desire" to repay the predator.[8]

e) **Priming the Target.** Next, the predator uses their established credibility to increase emotional dependence while engaging in escalating nonsexual touching, dirty jokes, conversations about sex, flirting, and inuendo. The predator may control their target through a veiled threat of removal of the predator's assistance or resources. Implicit or explicit coercion is an effective tool used by predators when priming targets for exploitation and abuse. [9]

f) **Creating the Victim: Instigating Sexual Contact.** Once the predator feels that their target is adequately primed, increasingly overt sexualized interactions are introduced. The point where a target becomes a victim is usually carefully orchestrated by the perpetrator, but to the target it may look and feel like a spontaneous event that arose from an otherwise ordinary encounter. The skilled predator will use an already established activity as a platform to launch into sexual activity.[10]

---

[8] Id. at 478.
[9] Id. at 479.
[10] Id. at 480.

g) **Controlling the Victim.** Stage seven involves the predator working to control their victim and their victim's environment in order to continue the exploitation. Secrecy, guilt, blame, threat, bribery, and promises of reward may all be used as tactics to control their victim. Using their victim's identified vulnerabilities, the predator will control their victim through fear and guilt, or by generating a sense of helplessness, isolation, and despair in their victim.[11] Predators will often escalate the sexual activities to include increasingly deviant or humiliating (to the victim) encounters and then use their victim's participation to control them.[12]

### *Sexual Grooming by Sgt. Lewis Powell*

26. During Ms. Hall's employment at the LPD, Sgt. Lewis Powell was one of her supervisors.

27. Sgt. Powell is more than fifteen (15) years older than Ms. Hall.

28. Sgt. Powell's height is 6'2".

29. Sgt. Powell weighed approximately 220lbs at all times referenced within this Complaint.

30. Sgt. Powell identified Ms. Hall as a young, vulnerable woman in a department dominated by aggressive older men.

31. Sgt. Powell used his position as second shift supervisor to befriend Ms. Hall and learned about Ms. Hall's desire to become a Crime Suppression Unit ("CSU") officer.

---

[11] Id. at 481.
[12] Id. at 482.

32.     In early March 2022, Sgt. Powell targeted Ms. Hall for sexual exploitation by abusing his knowledge of her personal circumstances, professional aspirations, and psychological vulnerabilities to coerce her into sexual activity.

33.     Sgt. Powell learned that Ms. Hall was going through the process of buying a home with her husband and that this process was extremely taxing on their relationship.

34.     Sgt. Powell positioned himself as a reliable source of companionship and advice regarding Ms. Hall's career and her marriage.

35.     Sgt. Powell contacted Ms. Hall through Facebook Messenger and offered his personal cell phone number.

36.     Sgt. Powell complimented Ms. Hall's physique and offered to show her workout techniques.

37.     Leveraging his role with the Crime Suppression Unit and his rank, Sgt. Powell promised to share with Ms. Hall training and "tips" in order to ensure advancement in her career.

38.     On or around March 15, 2022 Sgt. Powell would bring up the topic of sex while he was on patrol with Officer Hall.  He stated that he had "played the game before," and "could keep it cool at work."

39.     During one such conversation, Sgt. Powell directly propositioned Ms. Hall for the first time.  He stated that "it's just sex, I can give you what your husband can't give you." Ms. Hall responded that she was not interested.

40.     Sgt. Powell persisted in requests for sex despite Ms. Hall's resistance.

9

41.     Sgt. Powell stated that he was "taking an interest in Ms. Hall," and that Ms. Hall reminded him of himself when he first started at the department.

42.     Ms. Hall looked up to Sgt. Powell as a professional role model and an authority figure within the department who had the ability to make or break her career.

43.     Despite Ms. Hall's repeated denials, Sgt. Powell texted Ms. Hall during shift about how they could have a secret sexual relationship.

44.     Eventually, Ms. Hall gave in to Sgt. Powell's requests for sexual favors.

45.     Sgt. Powell told Ms. Hall to come in early for jujitsu training at an off-site facility used by the department for such purposes.

46.     When Ms. Hall arrived, Sgt. Powell kissed Ms. Hall.  He then pressured her to perform oral sex.  Ms. Hall expressed concern about the fact that they were engaging in this activity in a public place, but reluctantly agreed.  Ms. Hall explicitly stated that she did not want Sgt. Powell to ejaculate in her mouth.  Despite her expressed limitation, Sgt. Powell forcibly held Ms. Hall's head down and ejaculated in her mouth.

47.     Within days of the "jujitsu training," Sgt. Powell took Ms. Hall in his truck after shift for a sexual encounter.  She expressed a boundary by requiring the use of a condom and Sgt. Powell agreed not to ejaculate inside her vagina.  However, during sex, Sgt. Powell removed the condom, forcibly held Ms. Hall in place, and ejaculated inside Ms. Hall's vagina.  He said that it was "okay" because he had a vasectomy.

48.     On another occasion, while engaged in sexual activity, Ms. Hall noticed that Sgt. Powell was photographing or video recording her without her consent.  She became upset and demanded that Sgt. Powell delete the data.

49. Sgt. Powell assured her that he deleted data, but based on the February 6, 2023 <u>Investigative Report</u> by Frost Brown Todd LLP (Ex. B – Independent Investigation Report) at least one of these non-consensual intimate visual depictions ended up in the possession of Sgt. McGowan and Chief Davis.

50. Sgt. Powell regularly instructed Ms. Hall to delete text messages evincing the relationship.

51. Sgt. Powell persistently asked for sex during shift and whenever the two were alone together at LPD.

52. Sgt. Powell would engage in sexually charged communications involving explicit descriptions of sex acts.

53. On several occasions between March 2022 and October 2022, when Ms. Hall would make a mistake on duty, Sgt. Powell excused her mistakes on the condition that she perform sex acts with him later.[13]

54. Sgt. Powell threatened that "if anyone finds out or if you sleep with anyone else then it's over, things are going to be different, work's going to be different."[14]

55. Sgt. Powell used his authority as supervisor to seclude Ms. Hall and coerce her into performing sex acts. On one such occasion, Sgt. Powell secluded Ms. Hall at a police substation and asked her to perform oral sex. Ms. Hall declined, but Sgt. Powell would not take "no" for an answer. He begged Ms. Hall to perform oral sex, stating that he had "blue balls" and really needed it. Ms. Hall felt that she had no choice but to continue to provide sexual favors to Sgt. Powell, so she performed oral sex as demanded.

---

[13] Ex. C - <u>Hall 3rd Interview Transcript</u>, p. 1-2
[14] Id.

56. The exploitative sexual relationship with Sgt. Powell impacted Ms. Hall's mental health and contributed to worsening of her psychiatric symptoms including anxiety and depression.

57. Ms. Hall felt that she couldn't get out of the relationship because Sgt. Powell refused to accept her wishes whenever she told him that she did not want to have sex with him or when she tried to end the relationship.

58. On one occasion, when Ms. Hall tried to end the relationship, Sgt. Powell called her while heavily intoxicated. Sgt. Powell was crying and told Ms. Hall he drank an entire bottle of Jack Daniel's whiskey. He threatened to kill himself, told Ms. Hall "you did this to me," and asserted that Ms. Hall was responsible for his imminent suicide.[15]

59. Ms. Hall continued to experience anxiety, depression, and difficulty in concentrating at work because of her inability to escape the relationship with Sgt. Powell.

60. On Memorial Day Weekend 2022, Ms. Hall attended a party hosted by LPD Sgt. Eric Staats and attended by other LPD officers.

61. The only other woman at this party was Officer Magliocco's wife, who left early in the evening.

62. Ms. Hall posted on Facebook a picture of herself in a bathing suit, lying on the houseboat.

63. LPD Sgt. William Watson commented on Ms. Hall's Facebook post.

---

[15] Id. at 7.

64.     Ms. Hall and Officer Magliocco walked his wife back to her car, then secluded themselves and had sex before returning to the houseboat.

65.     When they returned, Officer Magliocco digitally penetrated the visibly intoxicated Ms. Hall in a hot tub within full view of the other LPD officers.

66.     After several minutes of digital penetration, Ms. Hall pushed away Officer Magliocco's hand from her crotch and said "no."

67.     Ten or twenty minutes later, Officer Magliocco poured vodka down Ms. Hall's throat.[16]

68.     Afterward, Ms. Hall and Officer Magliocco had sexual intercourse in the bathroom of the houseboat.

69.     The events occurring at Sgt. Staats' party became widely known within the LPD.

70.     Sgt. Powell told Ms. Hall that such flagrant sexual activity could lead to trouble.

71.     Sgt. Powell continued to leverage his position of authority to extract compliance with his sexual demands from Ms. Hall.

72.     Sgt. Powell texted Ms. Hall under the pretense of offering additional "training opportunities," and Ms. Hall would make excuses to avoid participating.

73.     Sgt. Powell did not accept Ms. Hall's rejection. He told Ms. Hall "you owe me." Ms. Hall submitted to further sexual acts with Sgt. Powell through October 2022.

74.     Sgt. Powell secluded Ms. Hall during shift at an archery range and stuck

---

[16] Ex. E - Initial LPD Report, p. 4; Ex. B - Independent Investigation Report, p. 2.

his hand down the front of her pants.

75.    Sgt. Powell provided Ms. Hall with special treatment at work and made sure she knew that he "wouldn't be doing this" if they didn't have a sexual relationship.

76.    Sgt. Powell coerced Ms. Hall to engage in sex acts despite her rejection and non-consent.  After violating Ms. Hall, Sgt. Powell said things like "I could tell you really weren't into that. You must really care about me, thank you for letting me finish. It shows how you really care about me."

77.    When Sgt. Powell wanted sex, he refused to take "no" for an answer.  He continued demanding sex, saying things like "We'll do it tomorrow," or "I've done so much for you, I've helped you," and "I've done so much for you in your personal life."[17]

78.    The sexually coercive environment on the second shift at the La Vergne Police Department triggered increasingly severe symptoms of mental illness in Ms. Hall.

79.    These symptoms impacted Ms. Hall's ability to perform her job by impairing her ability to concentrate on tasks such as driving.

80.    On July 14, 2022 Ms. Hall reached out to Sgt. Powell to convey her psychological distress and its impact on her ability to perform her duties.

81.    Sgt. Powell told Ms. Hall that, if she sought help for her psychological distress, she would be portrayed as the "weak female officer" and no one would trust her. He warned her against reporting her issues and advised her to "suck it up" and focus on work.

82.    Within hours after the call to Sgt. Powell, Ms. Hall was involved in an on-

---

[17] Ex. C - <u>Hall 3rd Interview Transcript</u>, p.6

duty collision. Ms. Hall was operating her patrol vehicle on Waldron Road at the Murfreesboro Road intersection. She attempted to merge lanes but failed to yield to another vehicle, causing a collision and property damage to both vehicles.

83. On October 21, 2022 Ms. Hall was involved in another collision while on duty. She was leaving the La Vergne police station to respond to an assault, but pulled out in front of a van and caused a wreck. She was injured and transported to Stonecrest Medical Center for treatment.

*Sexual Grooming by Sgt. Henry "Ty" McGowan*

84. Sgt. McGowan was a supervisor at the LPD during Ms. Hall's employment.

85. Sgt. McGowan is more than twenty (20) years older than Ms. Hall.

86. Sgt. McGowan is 6'01" tall.

87. Sgt. McGowan weighed over 240 lbs. at all times relevant to this Complaint.

88. During her employment with LPD and within the workplace environment, Sgt. McGowan continuously engaged in sexually charged behavior, including but not limited to:

    a) Smacking Ms. Hall on the buttocks at the police station.

    b) Referring to himself as "papa bear," and hugging Ms. Hall so tightly that he would lift her off the ground. During some of these hugs, Ms. Hall felt a bulge that she believed to be Sgt. McGowan's semi-erect penis pressing against her.

    c) Propositioning Ms. Hall for sex, specifically stating "I wanna bang you,"

"please use me for sex," and "I wanna eat you up."

    d) Making sexual moaning noises when Ms. Hall would walk into the room.

    e) Making comments about how good Ms. Hall looked in her uniform pants.

    f) Offering to pay if Ms. Hall would set up an "OnlyFans" account (managed by Sgt. McGowan) where Ms. Hall would have sex with other men so Sgt. McGowan could watch.

    g) Offering to pay and create an account on "FeetFinder" for Ms. Hall.

89.    Between February 2021 and October 2022, Ms. Hall repeatedly declined to participate in sexual activity with Sgt. McGowan.

90.    Despite Ms. Hall's repeated rejections of Sgt. McGowan's sexual advances, Sgt. McGowan continued to request such favors.

91.    In early November 2022, Ms. Hall reached out to Sgt. McGowan for guidance about how to deal with the psychological distress she was experiencing resulting from her circumstances at the LPD. Sgt. McGowan offered to meet with her at his house.

92.    Sgt. McGowan promised that he could protect Ms. Hall's position in the department. He mentioned that her on-duty auto collisions could prevent her from getting promoted, but that he had the power to ensure Ms. Hall got the promotion. Contemporaneously with these promises, Sgt. McGowan propositioned Ms. Hall for sexual intercourse.  Ms. Hall agreed.

93.    Ms. Hall's mental condition continued to deteriorate between November and December, 2022.

*Attempted Sexual Grooming Chief Burrel "Chip" Davis*

94.    At the time Ms. Hall joined the LPD, Chief Davis was the highest-ranking commanding officer of the department.

95.    Chief Davis is more than twenty (20) years older than Ms. Hall.

96.    Chief Davis and other supervisors at the LPD including McGowan and Powell used promises of promotions, favorable treatment, and special training as tools to coerce and manipulate junior female officers including Ms. Hall into performing sex acts on and providing intimate visual depictions to said supervisors.

97.    Chief Davis encouraged this behavior and shared in the pornography and sexual fantasy of mutually abusing Ms. Hall with his trusted supervisor Ty McGowan:

> Chief Davis told investigators that in a text exchange dated October 25, 2022, Sgt. McGowan sent him a photograph of a Black male foot inside Officer Hall's mouth.[8] Immediately thereafter, Chief Davis said the following exchange occurred between he and and Sgt. McGowan:
>
> CHIEF DAVIS:         Who dat
> SGT McGOWAN:     Hall… Lewis
> CHIEF DAVIS:         He on it again
> SGT McGOWAN:     He swears he ain't
> CHIEF DAVIS:         She nor her husband took that picture
> SGT McGOWAN:     She has a tight little ass tho
> CHIEF DAVIS:         Yep.

The exchange of messages continued on October 28, 2022:

CHIEF DAVIS:     Da F**k Lewis saying to deezz hoes cause normal pimp shit ain't working.
SGT McGOWAN:     No f**kin clue. He killing it!
CHIEF DAVIS:     Maybe goodie s**t[9]
SGT McGOWAN:     Gotta be. I can't do it. Gorilla 🦍 pimp
CHIEF DAVIS:     Only way I know
CHIEF DAVIS:     Does she talk to you
SGT McGOWAN:     Nope. She gettin too much attention
CHIEF DAVIS:     Oh I see
SGT McGOWAN:     It's all good.
CHIEF DAVIS:     I saved her for the last time.[10] I wish I could tell her who she f**king cant do s**t for her.
SGT McGOWAN:     I wish I could too!! Then we both could play
CHIEF DAVIS:     Can't f**k Lewis tho cause the pics are 🔥[11]

Ex. B – <u>Independent Investigative Report</u>

98.     As demonstrated in his October 28, 2022 text exchange, Chief Davis became frustrated by his comparative failure to groom Ms. Hall for sexual exploitation.

99.     Chief Davis repeatedly attempted to seclude Ms. Hall so that he could use the authority of his high office – or as he described it, "normal pimp shit," to induce Ms. Hall to gratify his own sexual desires.

100.     Chief Burrel Davis explicitly and implicitly engaged in sexually charged behavior permeating the workplace at LPD, including but not limited to:

    a)  Asking Ms. Hall to come into his office and "dance" for him

    b)  Providing his personal number and suggesting "lunch dates" with him

    c)  Complaining about his marital problems and stating that he is "lonely"

    d)  Characterizing Ms. Hall's clothing as "hot girl summer shit" Ex. D, *Facebook Messenger Messages with Chip Davis*.

    e)  Stating to Ms. Hall that he will "harass" her and "make it fun" *Id.*

f) Asking whether Ms. Hall preferred "dark, white, or milk chocolate" with sexual undertones.

g) Soliciting pornographic images of Ms. Hall from LPD supervisors without her consent.

h) Actively encouraging Sgt. McGowan to engage in sexually exploitative behaviors like nonconsensual sharing of pornographic images and participation in degrading sexual activities with authority figures in the department.

i) Threatening to fire Ms. Hall unless she went along with his demands for sexually inappropriate activities. *Id.*

### *The Conspiracy to Sexually Exploit Junior Female Officers of the La Vergne Police Department*

101. Defendants Powell, McGowan, Davis, and unnamed third parties agreed to use their positions of authority within the La Vergne City Police Department to groom junior female officers including Ms. Hall into acting as sex objects (who accept without overt resistance unwanted sexual advances) within the workplace; performing sex acts in response to promises of favorable treatment and/or threats of unfavorable treatment and termination; and providing intimate visual depictions within the meaning of 15 U.S.C. § 6851.

102. Defendants Powell, McGowan, Davis, and unnamed third parties agreed to ignore the written policies in place governing workplace relationships promulgated by the City of La Vergne in order to facilitate the grooming of female officers into performing sex acts and providing these Defendants with intimate visual depictions.

19

103. Defendants Powell, McGowan, and Davis and unnamed third parties maintained a custom within the LPD of permitting supervisors to use promises of promotions, favorable treatment, and special training as tools to coerce and manipulate junior female officers including Ms. Hall into performing sex acts on and providing intimate visual depictions to said supervisors.

104. Defendants Powell, McGowan, and Davis and unnamed third parties maintained a custom within the LPD of permitting supervisors to seclude and threaten junior female officers with demotion or termination in order to silence them from reporting sexual harassment or abuse.

105. Defendants Powell, McGowan, Davis and unnamed third parties agreed to share information with one another concerning successful grooming measures employed against female junior officers which resulted in sex acts or the production of intimate visual depictions in order to enhance their proficiency in exploitation of these women, or as they described it, "pimping."

106. Chief Davis acted as the leader of the agreement to sexually exploit female junior officers at the LPD.

107. Sgt. McGowan acted as Chief Davis's second-in-command in the agreement to sexually exploit female junior officers at the LPD by conveying information and intimate visual depictions between Davis and other participants.

108. In furtherance of the agreement to sexually exploit junior female officers

at the LPD, Sgt. McGowan shared Ms. Hall's psychological vulnerabilities[18] with. Sgt. Powell and Chief Davis in order to enhance their ability to victimize Ms. Hall.

109.    In furtherance of the agreement to sexually exploit female junior officers at the LPD, Defendant Powell exploited Ms. Hall's psychological vulnerabilities and abused his position of authority at the LPD by offering training in exchange for submission to his sexual demands; offering advancement in Ms. Hall's career in exchange for submission to sexual demands; trading sex acts for overlooking on-the-job mistakes; and threatening to make Ms. Hall's conditions of employment more difficult if she did not continue to participate in sex acts with him.

110.    Defendant McGowan groomed Ms. Hall as described *supra* in furtherance of the agreement to sexually exploit junior female officers at the LPD.

111.    Defendant Powell groomed Ms. Hall as described *supra* in furtherance of the agreement to sexually exploit junior female officers at the LPD.

112.    Chief Davis attempted to groom Ms. Hall as described *supra* in furtherance of the agreement to sexually exploit junior female officers at the LPD.

113.    Defendant Powell also captured intimate visual depictions of Ms. Hall without her knowledge during sex and, upon Ms. Hall's discovery, told her he deleted the intimate visual depictions.

114.    On and after October 1, 2022 Defendant Powell disseminated Ms. Hall's intimate visual depictions to third parties including Defendant McGowan by use of a cell

---

[18] Ms. Hall disclosed these vulnerabilities to Sgt. McGowan during her intake process. In response to this disclosure, Sgt. McGowan instructed Ms. Hall to lie about her history with mental illness and substance abuse.

phone connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.

115.     In furtherance of the agreement to sexually exploit junior female officers at the LPD, Chief Davis maintained a "secret" phone that he referred to as "Ole Boy."

| | |
|---|---|
| CHIEF DAVIS: | Okay, I-I yes, I was, yes. |
| PATTON: | Okay. Um, so, this document here says "Chip's secret phone" do you have a third cellphone?[1] |

[1] This was not the first time Director Patton had asked Chief Davis this question.

Ex. B – Independent Investigation Report, p. 2.

[23] "Ole Boy" is a nickname Chief Davis used to describe a personal burner cell phone. Chief Davis told us he no longer owns that phone.

Id., p. 10

116.     "Ole Boy" is a cell phone connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.

117.     On or about October 31, 2022 Chief Davis used "Ole Boy" to solicit intimate visual depictions of Ms. Hall from Sgt. McGowan in furtherance of the agreement to sexually exploit junior female officers at the LPD.

118.     On October 31, 2022 Defendant McGowan used a cell phone connected to the internet and telecommunications networks capable of transmitting and receiving data by electronic means to disseminate Ms. Hall's intimate visual depictions to Chief Davis.[19]

119.     On December 1, 2022 Defendant McGowan used a cell phone connected to

[19]

the internet and telecommunications networks capable of transmitting and receiving data by electronic means to disseminate Ms. Hall's intimate visual depictions to Chief Davis:

> On December 1, 2022, a week prior to Officer Hall's hospitalization, Sgt. McGowan sent Chief Davis another video of a nude Officer Hall masturbating, this one 30 seconds in length. The printed versions of the texts we reviewed, and that Chief Davis authenticated, do not reflect any conversation before or after the second video.

Ex. B – <u>Independent Investigation Report</u>, p. 10.

120.     Ms. Hall did not provide intimate visual depictions to Defendant Powell or Defendant McGowan as an affirmative, conscious, and voluntary decision free from force, fraud, misrepresentation, and coercion.

121.     Ms. Hall never provided intimate visual depictions to Chief Davis, nor did she consent for any other person to provide such images to Chief Davis.

122.     On December 8, 2022, Ms. Hall's mental health deteriorated to such a degree that she became suicidal.

123.     On December 8, 2022 Ms. Hall began to cut herself in an effort to "work herself up" to the ultimate act of taking her own life.

124.     On December 8, 2022 Ms. Hall was committed for psychiatric treatment at St. Thomas Ascension for 72 hours where she received treatment for bipolar disorder.

125.     Upon information and belief, Sgt. McGowan feared that Ms. Hall disclosed to her medical providers details concerning the sexual exploitation he inflicted upon her. This fear motivated Sgt. McGowan to cause a report regarding Ms. Hall's sexual interactions with other officers to be presented to La Vergne Mayor Jason Cole.

126.     Mayor Jason Cole, acting on the information provided to him from Sgt. McGowan's cell phone, contacted Director of Human Resources Andrew Patton and reported that "Officer Maegan Hall was having intimate relationships with other members of the La Vergne Police Department."

127.     The City of La Vergne's Human Resources director Andrew Patton received this information, conveyed it to Chief Davis, and commenced an investigation based on the allegations.

128.     Immediately after the investigation began, Chief Davis and Sgt. McGowan agreed to share confidential information gained by Chief Davis through exercise of his official authority as the ultimate policymaker at the LPD in order to thwart discovery of the agreement to sexually exploit junior female officers of the LPD:

> Aware that Officer Hall had been involved in a sexual relationship with one of her supervisors, Chief Davis did not inform the City's human resources department what he had learned about Officer hall's hospitalization. Instead, printed copies of text messages that we reviewed show that, on 12:02 p.m., December 9, 2022, Chief Davis texted Sergeant McGowan:
>
> | CHIEF DAVIS:[13] | PMag[14] trying to put up smoking [sic] mirrors and it's going to come back to bite him. |
> | SGT McGOWAN: | Really. Already? |
> | CHIEF DAVIS: | he telling Konrad everything but I f**king her |
> | SGT MCGOWAN: | Lmao |
>
> The Initial Investigation having not yet begun, Chief Davis and McGowan speculated on December 11 how an investigation might proceed if Powell and Davis were interviewed:
>
> | CHIEF DAVIS: | between you and I if it comes out about Lewis [Powell] and he hasn't said anything, he is toast |
> | CHIEF DAVIS: | Supervisor and officer |
> | CHIEF DAVIS: | at least demotion[15] |
> | SGT McGOWAN: | I've told him until I'm blue in the face bro. He ain't listening. Wants to see how it's going to play out. Smfh |

Ex. B – Independent Investigative Report, p.7.

129. Sgt. McGowan agreed with Chief Davis to cast Ms. Hall's sexual activity in a false light by asserting that Ms. Hall was the enthusiastic perpetrator of sexual misconduct.

130. Beginning on or around December 12, 2022 Chief Davis and Andrew Patton jointly conducted the initial investigation into sexual misconduct allegations at the LPD.

131. Throughout the December 2022 investigation, Sgt. McGowan communicated with Chief Davis using "Ole Boy" in order to subvert the course of the investigation and prevent the detection of the agreement to sexually exploit junior female officers at the LPD.

132. During the December 2022 investigation, following Defendant Powell's admissions of wrongdoing and allegations against other participants in the agreement to sexually exploit junior female officers at the LPD, Chief Davis used "Ole Boy" to communicate with Defendant McGowan and alert him to Powell's statements.[20]

133. During the December 2022 investigation, Defendant Powell explicitly directed Ms. Hall to lie about the sexual activities at issue in the investigation.

134. During the course of the December 2022 investigation, Sgt. McGowan sought to physically intimidate an employee in the human resources department by placing his hands around her neck.[21]

135. During the investigation led by Chief Davis, who had been actively engaged in the campaign of sexual coercion and harassment, Ms. Hall was afraid to

---

[20] Ex. B – Independent Investigation Report, p. 9.
[21] Id. at 2.

disclose details concerning the sexual exploitation inflicted against her.

136.    Sgt. Powell and Sgt. McGowan explicitly and implicitly conveyed to Ms. Hall that she would be in trouble if anyone found out about her work-related sexual activities.

137.    Ms. Hall ultimately disclosed to Patton and Chief Davis that she was afraid of Sgt. Powell;[22] that Powell was aggressive and coerced her into performing sex acts;[23] and that she was afraid of what Powell would do if she admitted to the relationship.[24]

138.    Chief Davis and Sgt. McGowan surreptitiously colluded with one another in an attempt to influence the outcome of the investigation in ways including but not limited to:

    a)  Relaying confidential information from witness interviews in order to structure false interview responses by McGowan;

    b)  Promoting the false narrative that Ms. Hall was a perpetrator and not a victim of sexual misconduct;

    c)  Intimidating Ms. Hall into silence concerning the wrongful conduct by Chief Davis;

    d)  Diminishing the abuse of authority by supervisors within the LPD;

    e)  Lying about the extent to which Sgt. McGowan and Chief Davis participated in abuse of authority and sexual exploitation of junior female officers at the LPD;

---

[22] Hall 3rd Interview Transcript, p. 1
[23] Id. at p. 2, 3, 6.
[24] Id. at p. 1.

f) Characterizing the incident at Sgt. Eric Staats' houseboat as a "Girls Gone Wild" hot tub party, although Ms. Hall was the only "girl" in the hot tub when she was digitally penetrated and vodka was poured down her throat:

- On Memorial Day weekend 2022, three male officers and Officer Hall shared a hot tub at another officer's home. While in the tub, Officer Hall's bathing suit top "came off." One of the male officers poured vodka down her throat.

Ex. B – <u>Independent Investigative Report</u>, p. 2.

139.    The Initial LPD Report (Ex. E) framed all of the sexual activity as being perpetrated or initiated by Ms. Hall:

**Allegations:** *(including those initially reported and those learned throughout the investigation)*

Sexual Relationships - unreported: Hall engaged Magliocco in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Powell in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Holladay in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Lugo in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged McGowan in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Shields in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Activity on duty: Hall engaged Powell in sexual acts while on duty and inside city owned property.

Sexual Activity on duty: Hall engaged Shields in sexual acts while on duty and inside city owned property.

Ex. E – <u>Initial LPD Report</u>, p. 1.

140.    Ms. Hall was terminated based on the Initial LPD Report which

intentionally omitted her specific and detailed allegations of sexual abuse and harassment by Sgt. Powell.[25]

141.    Based on the deliberately misleading Initial LPD Report, Ms. Hall gained unwanted international notoriety as the "girls gone wild" female officer.

142.    Media coverage ran with the exploitative and false "girls gone wild" narrative promoted in the Initial LPD Report.[26] [27] [28] [29] [30]

143.    Ms. Hall's face became the "Female Cop" meme widely circulated throughout the internet.[31]

144.    Entire forums have emerged where users swap memes and sexual fantasies about Ms. Hall.

145.    Reddit hosts the "r/maeganhallcop" subreddit which is dedicated to

[25] Ex. C - Hall 3rd Interview Transcript, p.1, 2, 3 6, 7.

[26] A 'Girls Gone Wild' party, Strip Uno and Lies: WSMV4 obtains transcripts of La Vergne police sex scandal interviews https://www.wsmv.com/2023/01/28/girls-gone-wild-party-strip-uno-lies-wsmv4-obtains-transcripts-la-vergne-police-sex-scandal-interviews/ (Published Jan. 27, 2023; last accessed February 20, 2023)

[27] 5 Middle Tenn. Officers fired, 3 suspended for sexual acts on duty, 'girls gone wild' hot tub party, three-way relations, city says https://www.wjhl.com/news/5-middle-tenn-officers-fired-3-suspended-for-sexual-acts-on-duty-girls-gone-wild-hot-tub-party-three-way-relations-city-says/ (Published Jan. 7, 2023; last accessed February 20, 2023)

[28] 'Girls Gone Wild' Tennessee Cop Maegan Hall Admits She Got Sloppy As Her Marriage Was Fasiling & It Turned Her Into A Hose Hound https://www.outkick.com/girls-gone-wild-tennessee-cop-maegan-hall-admits-she-got-sloppy-as-her-marriage-was-failing-it-turned-her-into-a-hose-hound/ (Published Jan. 30, 2023; last accessed February 20, 2023)

[29] Tennessee cop-gone-wild Maegan Hall gets offered $10,000 to do two shows at Nashville strip club after being fried for having on-duty sex with several colleagues https://www.dailymail.co.uk/news/article-11676755/Tennessee-cop-gone-wild-Maegan-Hall-gets-offered-10-000-two-shows-Nashville-strip-club.html

[30] Tennessee cops, including married female officer, fired after repeated wild sex romps https://nypost.com/2023/01/09/tennessee-cops-married-female-officer-fired-after-repeated-wild-sex-romps/ (Published January 9, 2023; last accessed February 20, 2023).

[31] Who is the female cop in memes? https://knowyourmeme.com/editorials/guides/who-is-the-female-cop-in-memes-officer-maegan-halls-sex-scandal-explained

Maegan Hall memes and photoshopped pornography.

146. Reddit, TikTok, Facebook, Instagram and other social media site users generated thousands of "Female Cop" memes with millions of views.

147. Since her involuntary christening as the "girls gone wild cop," Ms. Hall has been stalked and harassed by strangers from the internet and paparazzi.

148. Immediately following her termination from employment with the LPD, Ms. Hall obtained employment at a local restaurant.

149. Shortly thereafter, the restaurant terminated her based upon the extreme degree of publicity and paparazzi attention arising from the misleading Initial LPD Report.

150. But for the sexual grooming and abuse perpetrated by the City of La Vergne, Sgt. McGowan, Sgt. Powell, and Chief Davis, Ms. Hall would not have been subjected to this extraordinary degree of public ridicule and shaming.

151. Another result of the Initial LPD Report was the termination of Sgt. McGowan because, among other things, he grabbed the throat an HR employee as an act of physical intimidation. Even Chief Davis could not save his job under those circumstances.

152. Sgt. McGowan (or someone else with access to Sgt. McGowan's cell phone messages to "Ole Boy") decided to condemn Chief Davis to the same fate by revealing enough of their mutual sexually exploitative behavior to ensure Chief Davis's termination.

153. Sgt. McGowan (or someone else with access to Sgt. McGowan's cell phone

messages to "Ole Boy") again contacted Mayor Jason Cole with additional evidence on or around January 6, 2022.

154. Mayor Jason Cole shared this evidence with the La Vergne City Administrator Bruce Richardson.

155. Administrator Richardson commissioned an independent investigation by Frost Brown Todd, LLP.

156. Thomas H. Lee, Esq., conducted the independent investigation for Frost Brown Todd, LLP.

157. Mr. Lee's investigation involved confronting Chief Davis with printouts of his own messages with Sgt. McGowan.

158. Mr. Lee found that Chief Davis received nude photos and videos of Ms. Hall and other female officers at the LPD. He concluded that "the volume of pornographic material passing through the Chief's personal phones should have put any reasonable supervisor on notice that the risk of a sexually hostile work environment in the Department was unacceptably high." Ex. B – Independent Investigative Report.

159. The ultimate findings of that report were released on February 6, 2023:

**CONCLUSION**

Chief Davis was aware of inappropriate sexual activity between officers, including superior officers and subordinates, as well as the shockingly widespread sharing within his Department of nude photos and videos of female officers. Chief Davis admittedly received some of these inappropriate photographs and videos. He never voluntarily disclosed doing so. Chief Davis never reported this activity to the City's Human Resources Department, nor did he discipline any of the officers involved. When Officer Hall was hospitalized December 8, 2022, Chief Davis did not report his prior knowledge of her sexual activity with Sgt. Lewis Powell. When Hall and Powell denied inappropriate sexual activity during the Initial Investigation, Chief Davis did not disclose to Director Patton or others he knew, or even believed, them to be lying. Finally, the documentary evidence available to us compels a conclusion that Chief Davis misled Director Patton in his January 6 interview, and that he misled this investigation in his January 23 interview.

We find, therefore, that by failing to report or discipline officers engaged in inappropriate sexual activity, withholding information from City officials conducting the Initial Investigation, and facilitating a hostile work environment in the sharing of nude images of subordinate employees, Chief Davis impeded the Initial Investigation contrary to City policy and permitted— if not encouraged—conduct potentially contrary to state and federal law. We further find, on the basis of the documentary evidence available to us, that he impeded the city's January 6 investigation of his prior knowledge and this investigation by untruthful responses regarding his text message correspondence with Sgt. McGowan.

One final note: Much has been written in the popular media about a particular incident detailed in the Initial Investigation Report, a so-called "girls gone wild hot-tub party," in reference to exploitative videos of young women heavily marketed in the 1990s. This matter, however, is neither about girls nor "going wild." It has cost persons their careers, their health, and their families. It has cost the City and the community. Given time, the costs will rise and spread, even to the many officers who upheld their oaths, the City officials who acted honorably to uncover the truth, and the innocent friends and families of those who did not.

Responsibility also is shared. No one person is at fault for these events. In this matter, however, our investigation found that one person possessed a unique combination of information, authority, responsibility, and opportunity to change the course of these events. And, that Chief Davis did not.

Ex. B - <u>Independent Investigative Report</u>, p. 13.

160.    Chief Davis was terminated on February 6, 2023.

161.    In the words of Mayor Jason Cole, the "culture" at the LPD "uncovered in

these investigations is not acceptable."[32]

162.   Ms. Hall continues to be pilloried by local, national, and international media as a result of the Defendants' conspiracy to sexually groom and exploit her, culminating in the misleading Initial LPD Report.

# CAUSES OF ACTION FOR
# VIOLATIONS OF PLAINTIFF MAEGAN HALL'S
# FEDERALLY PROTECTED RIGHTS

## COUNT 1: 42 U.S.C. § 1983 – QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF THE RIGHT TO EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
## (ALL DEFENDANTS)

163.   Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.

164.   Ms. Hall is a woman.

165.   Ms. Hall was targeted by Sgt. Powell as described *supra* based on her sex.

166.   Sgt. Powell's repeated sexual advances and requests for sexual favors were unwelcome based on Ms. Hall's repeated rejections and expressions of discomfort prior to engaging in the first instance of sexual contact in March 2022.

167.   Ms. Hall's attempted on at least three occasions to terminate sexual contact with Sgt. Powell, but Sgt. Powell used the threats and promises described *supra* in order to coerce Ms. Hall into continuing to provide him with sexual favors and intimate visual depictions.

168.   Sgt. Powell explicitly and implicitly conditioned Ms. Hall's advancement

---

[32] "La Vergne police chief fired amid sex scandal," https://www.wsmv.com/2023/02/06/la-vergne-police-chief-fired-amid-sex-scandal/ (last accessed February 24, 2023)

within the LPD to the favorable assignment within the Crime Suppression Unit upon submission to Sgt. Powell's sexual demands.

169.   Sgt. Powell offered special training and special treatment in exchange for continued compliance with his sexual demands.

170.   Sgt. McGowan's sexual advances and requests for sexual favors described *supra* were unwelcome based on Ms. Hall's repeated rejections and expressions of discomfort prior to the November 2022 sexual encounter.

171.   Sgt. McGowan's November 2022 explicit promise to ensure Ms. Hall's promotion in spite of her on-duty automobile collisions constitutes a condition for receiving job benefits.

172.   Chief Davis is liable as a supervisor for the actions of Sgt. McGowan and Sgt. Powell because he condoned, facilitated, encouraged, and participated in the sexual exploitation of junior female officers including Ms. Hall.

173.   Defendants McGowan and Davis are independently liable under a "failure to intervene" theory because:

  a)  McGowan and Davis observed and had reason to know that Ms. Hall was being subjected to grooming and sexual abuse as described *supra* in violation of her right to Equal Protection.

  b)  McGowan and Davis had both the opportunity and the means to prevent the harm from occurring as described *supra.*

174.   The City of La Vergne is liable as a municipality for the actions of Sgt. Powell, Sgt. McGowan, and Chief Davis because:

a) Chief Davis is vested with final policymaking authority over the conduct and behavior of officers within the LPD pursuant Title 6, Chapter 1, § 101 of the City of La Vergne Municipal Code, which states that "All policemen shall obey and comply with such orders and administrative rules and regulations as the police chief may officially issue."

b) Chief Davis explicitly condoned and promoted a custom within the LPD whereby sexual coercion by supervisors against junior officers was openly accepted. Specific acts in perpetuation of this custom include:

    i. Actively thwarting outside investigations into allegations of sexual misconduct within the LPD by providing false and misleading information during investigations by the City of La Vergne Human Resources Department into allegations of sexual activities violative of the employee handbook;

    ii. Actively thwarting investigations by the City of La Vergne Human Resources Department by conveying confidential information gained through exercise of authority of his office;

    iii. Utilizing trusted supervisors including Sgt. McGowan to act as intermediaries between himself and lower-ranking officers to sexually exploit junior female officers as described *supra*; and

    iv. Soliciting intimate visual depictions of junior female officers through supervisors including Sgt. McGowan.

c)  Chief Davis affirmatively approved of, and participated in, Ms. Hall's sexual exploitation as described *supra.*

d)  Chief Davis, as a final policymaker for the City of La Vergne's police policies and procedures pursuant to Title 6, Chapter 1, § 101, maintained the authority to order specific training against sexual grooming by authority figures within the LPD, but failed to do so despite:

    i.  Actual knowledge of and/or deliberate indifference to the circumstances under which Oliva O. (a former junior female officer who left the LPD immediately before Ms. Hall's tenure began) because of sexual harassment and exploitation by male officers and supervisors within the department;

    ii.  Actual knowledge of and/or deliberate indifference to past and ongoing sexual harassment and exploitation of women (including Ms. Hall) within the department by supervisors using the authority, powers, and benefits of their official positions to coerce women into performing sexual acts and into providing intimate visual depictions.

    iii.  Personally possessing intimate visual depictions evincing sexual harassment of more than a quarter of the female officers within the LPD.[33]

---

[33] This minimum figure is calculated based on the Ex. B – Independent Investigative Report's finding that Chief Davis possessed "nude images and videos of female La Vergne ***officers***," so at a minimum,

e) The City of La Vergne maintained a custom of tolerance to the violation of junior female officers' rights to equal protection when it openly permitted the sexual exploitation of these officers as described *supra.*

175. Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and power of their positions to engage in non-consensual sexual behavior with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.

## COUNT 2: 42 U.S.C. § 1983 – HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF THE RIGHT TO EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### (ALL DEFENDANTS)

176. Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.

177. Ms. Hall is a woman.

178. Ms. Hall was subjected to unwelcome harassment by Defendants McGowan, Powell, and Davis as described *supra.*

179. Defendants McGowan, Powell, and Davis personally targeted Ms. Hall for grooming and harassment based on her sex and did not target male officers for grooming or harassment.

180. The conduct of Defendants McGowan, Powell, and Davis described *supra* was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.

---

Ole Boy contained photographs of one other female officer in addition to Ms. Hall. There were only seven (7) women in the department during Ms. Hall's tenure.

181. The City of La Vergne is liable as a municipality for the sexually hostile work environment because:

a) Chief Davis is vested with final policymaking authority over the conduct and behavior of officers within the LPD and pursuant Title 6, Chapter 1, § 101 of the City of La Vergne Municipal Code, which states that "All policemen shall obey and comply with such orders and administrative rules and regulations as the police chief may officially issue."

b) Chief Davis explicitly condoned and promoted a custom within the LPD whereby sexual coercion by supervisors against junior officers was openly accepted. Specific acts in perpetuation of this custom include:

 i. Actively thwarting outside investigations into allegations of sexual misconduct within the LPD by providing false and misleading information during investigations by the City of La Vergne Human Resources Department into allegations of sexual activities violative of the employee handbook;

 ii. Actively thwarting investigations by the City of La Vergne Human Resources Department by conveying confidential information gained through exercise of authority of his office;

 iii. Utilizing trusted supervisors including Sgt. McGowan to act as intermediaries between himself and lower-ranking officers to sexually exploit junior female officers as described *supra*; and

      iv. Soliciting intimate visual depictions of junior female officers through supervisors including Sgt. McGowan.

c) Chief Davis affirmatively approved of, and participated in, Maegan Hall's sexual exploitation as described *supra.*

d) Chief Davis, as a final policymaker for the City of La Vergne's police policies and procedures pursuant to Title 6, Chapter 1, § 101, maintained the authority to order specific training against sexual grooming by authority figures within the LPD, but failed to do so despite:

      i. Actual knowledge of and/or deliberate indifference to the circumstances under which Oliva O. (a former junior female officer who left the LPD immediately before Ms. Hall's tenure began) because of sexual harassment and exploitation by male officers and supervisors within the department;

      ii. Actual knowledge of and/or deliberate indifference to past and ongoing sexual harassment and exploitation of women (including Ms. Hall) within the department by supervisors using the authority, powers, and benefits of their official positions to coerce women into performing sexual acts and into providing intimate visual depictions.

      iii. Personally possessing intimate visual depictions evincing sexual harassment of more than a quarter of the female officers within

the LPD.[34]

    e) The City of La Vergne maintained a custom of tolerance to the violation of junior female officers' right to equal protection when it openly permitted the sexual exploitation of these officers as described *supra*.

182. Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and power of their positions to engage in non-consensual sexual behavior with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.

## COUNT 3: 42 U.S.C. § 1983 – VIOLATION OF THE RIGHT TO BODILY INTEGRITY GUARANTEED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (ALL DEFENDANTS)

183. Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.

184. Defendants Powell and McGowan psychologically coerced Ms. Hall into engaging in physical sex acts as described *supra*.

185. Defendant Davis attempted to psychologically coerce Ms. Hall as described *supra*.

186. Defendant Powell, under his authority as her supervisor at the LPD, physically coerced Ms. Hall between March 2022 and October 2022 by:

    a) Holding Ms. Hall's head down during an oral sexual encounter and

---

[34] This minimum figure is calculated based on the Ex. B – Independent Investigative Report's finding that Chief Davis possessed "nude images and videos of female La Vergne *officers*," so at a minimum, "Ole Boy" contained photographs of one other female officer in addition to Ms. Hall. There were only seven (7) women in the department during Ms. Hall's tenure.

ejaculating in her mouth, despite her explicit boundary against such contact.

b) Removing a condom during a vaginal sexual encounter, despite Ms. Hall's expressed boundary against such contact;

c) Holding her body down during a vaginal sexual encounter and ejaculating into her vagina, despite her explicit boundary against such contact.

187. The conduct of Defendants McGowan, Davis, and Powell whereby they sexually groomed and exploited Ms. Hall described *supra* shocks the conscience.

188. Defendants McGowan and Davis are independently liable under a "failure to intervene" theory because:

a) McGowan and Davis observed and had reason to know that Ms. Hall was being subjected to grooming and sexual abuse as described *supra* in violation of her right to Due Process, and

b) McGowan and Davis had both the opportunity and the means to prevent the harm from occurring as described *supra.*

189. Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and the power of their positions to engage in grooming, sexual abuse, and non-consensual sexual behaviors with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.

190. The City of La Vergne is liable as a municipality for the violations of Ms. Hall's Due Process Right to Bodily Integrity because:

a) Chief Davis is vested with final policymaking authority over the conduct and behavior of officers within the LPD and pursuant Title 6, Chapter 1, § 101 of the City of La Vergne Municipal Code, which states that "All policemen shall obey and comply with such orders and administrative rules and regulations as the police chief may officially issue.

b) Chief Davis explicitly condoned and promoted a custom within the LPD whereby sexual coercion by supervisors against junior officers was openly accepted. Specific acts in perpetuation of this custom include:

  i. Actively thwarting outside investigations into allegations of sexual misconduct within the LPD by providing false and misleading information during investigations by the City of La Vergne Human Resources Department into allegations of sexual activities violative of the employee handbook;

  ii. Actively thwarting investigations by the City of La Vergne Human Resources Department by conveying confidential information gained through exercise of authority of his office;

  iii. Utilizing trusted supervisors including Sgt. McGowan to act as intermediaries between himself and lower-ranking officers to sexually exploit junior female officers as described *supra*

  iv. Soliciting intimate visual depictions of junior female officers through supervisors including Sgt. McGowan

c) Chief Davis affirmatively approved of, and participated in, Maegan Hall's sexual exploitation as described *supra.*

d) Chief Davis, as a final policymaker for the City of La Vergne's police policies and procedures pursuant to Title 6, Chapter 1, § 101, maintained the authority to order specific training against sexual grooming by authority figures within the LPD, but failed to do so despite:

   i. Actual knowledge of and/or deliberate indifference to the circumstances under which Oliva O. (a former junior female officer who left the LPD immediately before Ms. Hall's tenure began) because of sexual harassment and exploitation by male officers and supervisors within the department;

   ii. Actual knowledge of and/or deliberate indifference to past and ongoing sexual harassment and exploitation of women (including Ms. Hall) within the department by supervisors using the authority, powers, and benefits of their official positions to coerce women into performing sexual acts and into providing intimate visual depictions; and

   iii. Personally possessing intimate visual depictions evincing sexual harassment of more than a quarter of the female officers within the LPD.[35]

---

[35] This minimum figure is calculated based on the Ex. B – Independent Investigative Report's finding that Chief Davis possessed "nude images and videos of female La Vergne ***officers***," so at a minimum,

e) The City of La Vergne maintained a custom of tolerance to the violation of junior female officers' rights to Due Process when it openly permitted the sexual exploitation of these officers as described *supra*.

### COUNT 4: VIOLATION OF 15 U.S.C. § 6851 – VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT (DEFENDANTS POWELL AND McGOWAN)

191. Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.

192. On October 31, 2022 Defendants Powell and McGowan transmitted intimate visual depictions of Ms. Hall without her consent as described *supra* and as outlined in Ex. B – Independent Investigative Report:

> Chief Davis admitted during the course of our investigation that he received a text image from Sgt. McGowan showing a Caucasian woman's bare buttocks and two videos showing a nude Caucasian woman masturbating. Chief Davis told us he believed the images to be of Maegan Hall. The text messages were dated October 31, 2022, approximately 6 weeks before Officer Hall was hospitalized. The undisputed exchange between Chief Davis and Sgt. McGowan is as follows:

| CHIEF DAVIS: | You never sent me whatever |
|---|---|
| CHIEF DAVIS: | I'm on ole boy[23] |
| SGT McGOWAN: | Give me a few |
| SGT McGOWAN: | [Nude photo of woman's buttocks] |
| SGT McGOWAN: | [13-second video of woman masturbating] |
| CHIEF DAVIS: | She must be obsessed |
| SGT McGOWAN: | Oh hell yeah. That n_____ need to stop lol |
| CHIEF DAVIS: | Yep |
| SGT McGOWAN: | But dayum |
| CHIEF DAVIS: | It hard to look at her and not say, you know I know! Lol |
| SGT McGOWAN: | She's definitely got it |

193. On December 1, 2022, Defendant McGowan transmitted an intimate

---

Ole Boy contained photographs of one other female officer in addition to Ms. Hall. There were only seven (7) women in the department during Ms. Hall's tenure.

visual depiction of Ms. Hall without her consent as described *supra* and as outlined in

Ex. B – Independent Investigative Report:

> On December 1, 2022, a week prior to Officer Hall's hospitalization, Sgt. McGowan sent Chief Davis another video of a nude Officer Hall masturbating, this one 30 seconds in length. The printed versions of the texts we reviewed, and that Chief Davis authenticated, do not reflect any conversation before or after the second video.

194.    Defendants Powell and McGowan transmitted these intimate visual depictions of Ms. Hall using cell phones connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.

195.    Therefore, Defendants Powell and McGowan are each liable for liquidated damages pursuant to 15 U.S.C. § 6851.

## COUNT 5:  42 U.S.C. § 1983
### CONSPIRACY TO VIOLATE 15 U.S.C. § 6851, PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS, AND FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS
### (ALL DEFENDANTS)

196.    Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.

197.    As described *supra,* Defendants Powell, McGowan, and Davis entered into an agreement to use the authority and power of their offices within the LPD to sexually exploit junior female officers including Ms. Hall.

198.    As described *supra,* Defendants Powell, McGowan, and Davis shared the general objective to sexually exploit (or, as they describe it, "pimp") Ms. Hall in violation of her federally protected rights to substantive due process, equal protection, and the statutory rights guaranteed by 15 U.S.C. § 6851.

199. As described *supra*, each of the Defendants took overt acts in furtherance of the conspiracy including but not limited to:

a) Chief Davis maintained the secret phone he referred to as "Ole Boy" for the purposes of (1) transmitting sexually exploitative intimate visual depictions of female officers including Ms. Hall; (2) communicating with his second-in-command Sgt. McGowan regarding sexual exploitation of Ms. Hall and concealing such exploitation from those outside the conspiracy; (3) issuing directives to Sgt. McGowan as an intermediary to other members of the conspiracy.

b) Sgt. Powell sexually abused Ms. Hall by physically holding her down and ejaculating in her mouth despite her express boundary against such contact;

c) Sgt. Powell removed a condom during vaginal intercourse, despite her express boundary against such contact;

d) Sgt. Powell sexually abused Ms. Hall by physically holding her body down and ejaculating in her vagina, despite her express boundary against such contact;

e) Sgt. Powell capitalized on Ms. Hall's on-duty mistakes in order to grant favorable treatment in exchange for sex acts;

f) Sgt. Powell recorded Ms. Hall on at least one occasion without her knowledge and transmitted that intimate visual depiction to Sgt. McGowan;

Case 3:23-cv-00173   Document 1   Filed 02/27/23   Page 45 of 51 PageID #: 45

g) Sgt. McGowan sent Chief Davis sexually exploitative intimate visual depictions of Ms. Hall to Chief Davis through "Ole Boy";

h) Chief Davis facilitated Sgt. Powell's and Sgt. McGowan's sexual exploitation of Ms. Hall by "covering" for her on-duty accidents in order to further groom her for exploitation by members of the conspiracy;

i) Sgt. McGowan and Sgt. Powell psychologically coerced Ms. Hall to lie during the investigation to prevent detection of the conspiracy;

j) Sgt. McGowan grabbed the throat of a Human Resources worker in an attempt to physically intimidate her during the course of the investigation;

k) Chief Davis intentionally misled both Human Resources Director Patton and Independent Investigator Lee in order to prevent detection of the conspiracy;

l) Chief Davis intentionally intimidated Ms. Hall by his presence during her interviews in order to ensure that she did not name him as a perpetrator of sexual harassment or abuse; and

m) Chief Davis intentionally withheld his knowledge of McGowan's and Powell's involvement in the conspiracy to sexually exploit junior female officers including Ms. Hall in order to cast her as a perpetrator and not the victim of the conspirators' sexual abuse.

200. As a direct and proximate result of the conspiracy, Ms. Hall was deprived of her federally protected rights to equal protection, bodily integrity, and the rights

afforded her by 15 U.S.C. § 6851.

201.    As a direct and proximate result of the conspiracy, Ms. Hall suffered not only the abuse and deprivations of her federally protected constitutional and statutory rights, but also public humiliation and castigation on an international scale.

202.    Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and the power of their positions to engage in grooming, sexual abuse, and non-consensual sexual behaviors with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.

203.    The City of La Vergne is liable as a municipality for the conspiracy because:

a) Chief Davis is vested with final policymaking authority over the conduct and behavior of officers within the LPD and pursuant Title 6, Chapter 1, § 101 of the City of La Vergne Municipal Code, which states that "All policemen shall obey and comply with such orders and administrative rules and regulations as the police chief may officially issue."

b) Chief Davis explicitly condoned and promoted a custom within the LPD whereby sexual coercion by supervisors against junior officers was openly accepted.  Specific acts in perpetuation of this custom include:

i. Actively thwarting outside investigations into allegations of sexual misconduct within the LPD by providing false and misleading information during investigations by the City of La Vergne Human Resources Department into allegations of sexual

activities violative of the employee handbook;

    ii.  Actively thwarting investigations by the City of La Vergne Human Resources Department by conveying confidential information gained through exercise of authority of his office;

    iii.  Utilizing trusted supervisors including Sgt. McGowan to act as intermediaries between himself and lower-ranking officers to sexually exploit junior female officers as described *supra*; and

    iv.  Soliciting intimate visual depictions of junior female officers through supervisors including Sgt. McGowan.

c)  Chief Davis affirmatively encouraged and participated in Ms. Hall's sexual exploitation as described *supra*.

d)  Chief Davis, as a final policymaker for the City of La Vergne's police policies and procedures pursuant to Title 6, Chapter 1, § 101, maintained the authority to order specific training against sexual grooming by authority figures within the LPD, but failed to do so despite:

    i.  Actual knowledge of and/or deliberate indifference to the circumstances under which Oliva O. (a former junior female officer who left the LPD immediately before Ms. Hall's tenure began) because of sexual harassment and exploitation by male officers and supervisors within the department;

    ii.  Actual knowledge of and/or deliberate indifference to past and

ongoing sexual harassment and exploitation of women (including Ms. Hall) within the department by supervisors using the authority, powers, and benefits of their official positions to coerce women into performing sexual acts and into providing intimate visual depictions; and

    iii. Personally possessing intimate visual depictions evincing sexual harassment of more than a quarter of the female officers within the LPD.

e) The City of La Vergne maintained a custom of tolerance to the violation of junior female officers' constitutionally and statutorily protected rights when it openly permitted the sexual exploitation of these officers as described *supra.*

## DAMAGES

204. As a direct and proximate result of the Defendants' violations of her federally protected rights, Ms. Hall has suffered:

a) Economic damages for lost wages and medical expenses,

b) Reputational harm,

c) Mental suffering,

d) Loss of enjoyment of life, and

e) Emotional Distress.

205. Ms. Hall is entitled to liquidated damages for each nonconsensual disclosure of her intimate visual depictions from Defendant Powell and Defendant

McGowan pursuant to 15 U.S.C. § 6851.

206. Ms. Hall is entitled to an award of punitive damages against Defendants Powell, McGowan, and Davis in an amount to be determined by a jury for the acts committed with malice or reckless disregard described in this Complaint.

REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Maegan Olivia Hall requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered against all Defendants in Counts 1-3 and 5;

IV. That a Declaratory Judgment be entered against Defendants McGowan and Powell in Count 4;

V. That she be awarded nominal damages from all Defendants for Counts 1-3 and 5;

VI. That she be awarded compensatory damages for economic, non-economic, and reputational damages for Counts 1-3 and 5 against all defendants, jointly and severally, in an amount to be determined by a jury;

VII. That she be awarded punitive damages against Defendants McGowan, Powell, and Davis for their malicious and reckless conduct for Counts 1-3 and 5 in an amount to be determined by a jury;

VIII.     That she be awarded liquidated damages for each nonconsensual disclosure of her intimate visual depictions from Defendant Powell and Defendant McGowan for their direct violations of 15 U.S.C. § 6851;

IX.      That she be awarded reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988 and 15 U.S.C. § 6851;

X.       That she be awarded pre-judgment and post-judgment interest on her damages; and

XI.      For such other, further, and general relief as the Court deems just and appropriate.


Respectfully submitted,

*s/ Wesley Clark*
Wesley Ben Clark, #32611
Frank Ross Brazil, #34586
Sarah Mansfield #39476
BRAZIL CLARK, PLLC
*Attorneys for Plaintiff Maegan Hall*
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
sarah@brazilclark.com