# INVESTIGATIVE REPORT

| | |
|---|---|
| To: | Mr. Bruce Richardson<br>City Administrator & Recorder<br>City of La Vergne, Tennessee |
| From: | Thomas H. Lee, Esq.<br>Frost Brown Todd LLP |
| Date: | February 6, 2023 |
| Re: | Issues Related to La Vergne Police Department Investigation |

## I. INTRODUCTION

On December 8, 2022, Maegan Hall, a police officer employed by the City of La Vergne ("City"), was hospitalized for 72 hours after she disclosed suicidal thoughts and intentions to medical personnel and others. Officer Hall contemporaneously disclosed her hospitalization, and the events leading to it, to her superiors and fellow officers. Police Chief Burrell "Chip" Davis and Captain Konrad Kaul informed senior City administrators of Officer Hall's hospitalization the same day. Four days later, on December 12, 2022, La Vergne Mayor Jason Cole informed City Human Resources Director Andrew Patton that the mayor had received information that Officer Hall "was having intimate relationships with other members of the La Vergne Police Department," including sexual activity with three officers, an officer's spouse, and attendance at what the mayor's source called a "Girls Gone Wild" hot tub party at another officer's home.

These disclosures set in motion a striking chain of events.

The City initiated an internal investigation of the Mayor's information (the "Initial Investigation"). With the active participation of Police Chief Burrell "Chip" Davis and Mayor Cole, Director Patton interviewed 11 officers and City personnel over two weeks in December 2022. Chief Davis sat in on nearly all officer interviews. Mayor Cole continued to provide anonymously sourced information. The City documented its findings and conclusions in a 20-page memorandum dated December 28, 2022 (the "Initial Investigation Report"). The Initial Investigation Report substantiated the information Mayor Cole reported to Patton on December 12, and more. Its findings included:

- Officer Hall had engaged in sexual activity ranging from intercourse and oral sex, some on City property, to the sharing of nude photographs and videos with at least seven male officers: Officer Patrick Magliocco, Sergeant Lewis Powell, Officer Larry Holladay, Sergeant Ty McGowan, Officer Juan Lugo, Officer Seneca Shields, Officer Gavin Schoeberl.
- Numerous La Vergne officers had shared nude photographs of Officer Hall and themselves.

- On Memorial Day weekend 2022, three male officers and Officer Hall shared a hot tub at another officer's home. While in the tub, Officer Hall's bathing suit top "came off." One of the male officers poured vodka down her throat.
- Four of the male officers—Powell, McGowan, Lugo, and Shields—initially denied engaging in sexual activity with Officer Hall in their interviews with Patton. All eventually admitted they had.
- Three officers—McGowan, Powell, and Hall—conspired to fabricate untruthful responses to the Initial Investigation. One officer, McGowan, sought to physically intimidate an employee in the human resources department in the course of the investigation by placing his hands around her neck.

On December 28, Mayor Cole received the Initial Investigation and recommendations from Director Patton for employment actions against the officers involved. On December 29, the Mayor approved terminating the employment of Powell, McGowan, Lugo, Shields, and Hall and ordered suspensions of varying lengths without pay for Magliocco, Holladay, and Schoeberl.

As the City processed the employment actions against the eight officers through the following week, Mayor Cole received two sets of documents on January 5, 2023, appearing to be printed copies of text messages between McGowan and Chief Davis. The documents bore dates in October 2022 and December 2022, before and immediately after Officer Hall's hospitalization. Mayor Cole delivered the documents to Director Patton on January 6. Mayor Cole told Patton the documents had come from the same source as the information he had received on December 12. Mayor Cole once again did not identify his source.

Later on January 6, as the City released the Initial Investigation report and announced the employment actions the mayor had approved, Director Patton and City Administrator Bruce Richardson interviewed Chief Davis about the 2022 text message printouts. The interview began with Director Patton showing Chief Davis the printouts:

| | |
|---|---|
| PATTON: | Chief, can you tell me if this is you? |
| CHIEF DAVIS: | Um, I would say so, yes. I don't know what this is right here, I can't see it. |
| PATTON: | I couldn't tell who that picture was either. |
| CHIEF DAVIS: | Okay, I-I yes, I was, yes. |
| PATTON: | Okay. Um, so, this document here says "Chip's secret phone" do you have a third cellphone?[1] |

---

[1] This was not the first time Director Patton had asked Chief Davis this question.

| | |
|---|---|
| PATTON: | I had a phone call with you, right, during the investigation where I asked you about a third phone and? |
| CHIEF DAVIS: | We did not have a telephone conversation during the investigation. |
| PATTON: | Okay. |
| CHIEF DAVIS: | You called me after the fact. |
| PATTON: | In the evening, in the evening, yes. I called you after the fact. |
| ... | |
| CHIEF DAVIS: | I said no at that time because I was not thinking about that phone at the time. |
| PATTON: | Okay. |

| | | |
|---|---|---|
| CHIEF DAVIS: | | I do have a third phone, but it's not a secret phone, it was a phone that I had, I have a business. |
| PATTON: | | Okay. |
| CHIEF DAVIS: | | Catering business. |
| PATTON: | | Okay. |
| CHIEF DAVIS: | | Prepaid phone that you know, my mom and I decided one year it would be nice to have, yes. |
| PATTON: | | Okay, and is this a text conversation between yourself and Ty McGowan? |
| CHIEF DAVIS: | | Yes, what this is, okay, so, what that phone had been used for um this was a phone that I guess you could say trash went to, stuff that I didn't want on my work phone, stuff I didn't want on my personal phone. So, he sent a lot of trash. Yes, we had conversations, friends, and that's what this stuff right here is.[2] |

As the conversation continued, Chief Davis would qualify, and then bolster, and then qualify again his initial admissions, implying that messages on his personal phone were not sent or received by the Chief of Police. "These things was conversations with a friend. This wasn't Chief, let me just say that." Davis, Interview One at 2. As Chief Davis told us in our interview: "This was Ty and Chip."

Later in the interview:

- "And again, I'll say for the record this was a conversation venting to a friend about what's going on. This has nothing to do with me. Yes, it talks about work stuff but now it's being used against me as the Chief. So, yes, these things were said." Id. at 4.
- "But this right here, that's talk between friends. Stuff that you may have in your phone. You may or may not but I'm just saying, stuff that we may all have in there but then when the chips are down, your back is against the wall, you throw who your so-called friend for multiple years, under the bus. Okay." Id. at 6.

After Richardson informed the Chief the City would need to request an independent investigation, Chief Davis resumed his attack on the veracity and meaning of the October texts.

| | | |
|---|---|---|
| CHIEF DAVIS: | | Yes, you could say that there was some knowledge, alleged knowledge, of Lewis [Powell] being involved but I asked Lewis as the Chief, as the Chief.[3] |

---

CHIEF DAVIS: I-I will admit that, yes.

Transcript of Interview, Chief Burrell "Chip" Davis, at 1-2 (Dec. 28, 2022) (hereinafter, "Davis Interview One").
[2] Id. at 1.
[3] Patton and City Administrator Richardson pressed Davis on his failure to act on his knowledge regarding Powell and Hall before Hall's hospitalization:

RICHARDSON: Chief, one of the things that bothers me is you didn't confront Powell until when?
CHIEF DAVIS: Until I left his office.

Page 3 of 14

| | |
|---|---|
| PATTON: | And that was on the 8th when she was calling out of work, right? |
| CHIEF DAVIS: | When I left your office and I said "Let me-let me handle this." I sat him down in that seat right then and there and asked him and he said no, I said "Are you telling me the truth?" "Yeah, boss. Yeah, yeah." "Alright, get to work." Id. at 9. |

Chief Davis also claimed the printouts were not authentic. "Obviously, it's manipulation." Id. at 16. "Obviously manipulation, but I'm about to be sent home for obvious manipulation…see what I'm saying? This is s**t that's been planted." Id. at 17.[4] After a brief sidebar outside the interview room, Richardson and Patton returned. "Chief, at this point um we came in here initially to see if these text messages involved you," Richardson said. "You did verify that. Um, as-as to whether there is any wrongdoing, we can't make that determination, okay. So, that's why we're going to turn it over to a third-party investigator. So, I understand. I guess this is our finding. Because we asked if these were your text messages, which you did admit." Id.

## II. PROCEDURAL BACKGROUND

On January 9, 2023, the City entered into an engagement with Frost Brown Todd LLP ("FBT") to act as special investigative counsel in this matter. Following an onboarding conversation with City Administrator and Recorder Bruce Richardson and City Attorney Evan Cope regarding the history set forth above, and the conduct of our own investigation, our findings and conclusions came to focus on a single question: Whether Chief Davis had impeded the Initial Investigation.

We undertook our investigation of this matter, pursuant to the process outlined in the City Employee Handbook (the "Handbook"). Section 9.5 of the Handbook authorizes the City Administrator to designate an "independent outside investigator" to review claims of workplace harassment, discrimination, or abusive conduct.[5] Pursuant to Section 9.5, "[t]he investigator will meet with…any witnesses, the supervisor, any other members of management considered appropriate and other individuals that may have relevant information. An investigative report will be prepared based on findings from the investigation." Additionally, given the active role Chief Davis took in the Initial Investigation, Director Patton recused himself from any investigation of matters involving Chief Davis, resulting in the referral of such matters to this firm by the City Administrator.

---

| | |
|---|---|
| RICHARDSON: | In December? |
| PATTON: | The 8th. |
| RICHARDSON: | And this is back in October. |
| CHIEF DAVIS: | Okay. |
| RICHARDSON: | That's my point. |
| CHIEF DAVIS: | Yeah, but this is, this is just friend talk right here. Id. at 11. |

[4] Chief Davis repeated that claim to us: "I can't say that all of these [printed messages] are genuine."
[5] This Firm has conducted three prior external investigations on behalf of the City since January 2019. Two of those investigations involved matters within the La Vergne Police Department.

### III. WITNESSES INTERVIEWED AND DOCUMENTS CONSULTED

We conducted interviews with the persons below on City premises on January 23, 2023:

- Mayor Jason Cole
- Burrell "Chip" Davis, Chief of Police[6]
- Andrew Patton, Director of Human Resources
- Captain Konrad Kaul, La Vergne Police
- Officer Patrick Magliocco, La Vergne Police
- Officer Larry Holladay, La Vergne Police
- Officer Gavin Schoeberl, La Vergne Police

We were unable to interview witnesses no longer employed by the City of La Vergne, though former Sgt. McGowan did provide photographs of his personal cell phone, showing his messages application and messages therein. We telephoned counsel for former Officer Hall on January 12, 2023, and left word that we wanted to speak with her for this matter. We did not receive a return call and made no further effort to contact former Officer Hall.

In the course of our investigation, we reviewed the following documents:

- City of La Vergne Employee Handbook
- Photocopies of Text Messages, October & December 2022 between Chief Davis and Sgt. McGowan
- Text messages, December 14, 2023, between Chief Davis and Sgt. McGowan, personally reviewed during January 23, 2023, interview from Chief Davis' personal cell phone
- Initial Investigative Report, City of La Vergne (December 28, 2022)
- Transcript of Interview, Chief Davis (January 6, 2023)
- Transcript of Interviews, Officer Hall (December 16 & 21, 2022)
- Transcript of Interview, Sergeant Ty McGowan (December 22, 2022)
- Requests for Public Records of the City of La Vergne, submitted by Chief Davis (January 6, 9, 10, and 23, 2023) and responsive documents provided to Chief Davis
- General Order, La Vergne Police Department, Order No. GO-300.01 (November 1, 2010)
- Personnel file, Sgt. McGowan
- City of La Vergne Garrity Warning, Interview of Chief Davis (Jan. 6, 2023)

### IV. INVESTIGATIVE FINDINGS RELATED TO CHIEF DAVIS

1. **Chief Davis knew prior to the Initial Investigation—and did not voluntarily disclose—that at least two members of the La Vergne Police Department were engaged in inappropriate sexual activity**

We reviewed text messages between Chief Davis and former La Vergne Sgt. Ty McGowan from September and October 2022. These messages confirm that Davis knew that Sgt. Lewis

---

[6] At Chief Davis' request, we conducted a follow-up telephone interview on January 26, 2023.

Powell and Officer Maegan Hall were engaged in sexual activity, in violation of city and department policy.[7]

Chief Davis told investigators that in a text exchange dated October 25, 2022, Sgt. McGowan sent him a photograph of a Black male foot inside Officer Hall's mouth.[8] Immediately thereafter, Chief Davis said the following exchange occurred between he and Sgt. McGowan:

| | |
|---|---|
| CHIEF DAVIS: | Who dat |
| SGT McGOWAN: | Hall… Lewis |
| CHIEF DAVIS: | He on it again |
| SGT McGOWAN: | He swears he ain't |
| CHIEF DAVIS: | She nor her husband took that picture |
| SGT McGOWAN: | She has a tight little ass tho |
| CHIEF DAVIS: | Yep. |

The exchange of messages continued on October 28, 2022:

| | |
|---|---|
| CHIEF DAVIS: | Da F**k Lewis saying to deezz hoes cause normal pimp shit ain't working. |
| SGT McGOWAN: | No f**kin clue. He killing it! |
| CHIEF DAVIS: | Maybe goodie s**t[9] |
| SGT McGOWAN: | Gotta be. I can't do it. Gorilla 🦍 pimp |
| CHIEF DAVIS: | Only way I know |
| CHIEF DAVIS: | Does she talk to you |
| SGT McGOWAN: | Nope. She gettin too much attention |
| CHIEF DAVIS: | Oh I see |
| SGT McGOWAN: | It's all good. |
| CHIEF DAVIS: | I saved her for the last time.[10] I wish I could tell her who she f**king cant do s**t for her. |
| SGT McGOWAN: | I wish I could too!! Then we both could play |
| CHIEF DAVIS: | Can't f**k Lewis tho cause the pics are 🔥[11] |

We showed the above messages to Chief Davis during our January 23, 2023, interview. Excepting those noted in the footnotes of this report, Chief Davis did not dispute their authenticity.

---

[7] In our interview, Chief Davis admitted the substance of the texts, but suggested their personal history somehow rendered messages about the workplace less significant. "Even though he [McGowan] did say, it was never official."

[8] Mayor Cole provided the printed message exchange to Director Patton on January 6, 2023. The printed message exchange does not include the image Chief Davis described in his January 6 interview.

[9] In our interview of January 23, 2023, Chief Davis disputed sending this message. The message, however, is consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

[10] Chief Davis told Officer Hall during her second interview with Director Patton, "There were times with your car crashes that people wanted you dismissed, but I fought for you." Transcript of 2nd Maegan Hall Interview, at 4.

[11] In our interview of January 23, 2023, Chief Davis disputed sending this message. "I don't use flame emojis," he said. The message, however, is consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

Officer Hall was admitted to a Middle Tennessee hospital on Thursday, December 8, 2022. The next day, she telephoned Officer Magliocco to let him know where she was.[12] Magliocco and Captain Konrad Kaul told us that Magliocco called him that morning to let him know that Hall had been hospitalized. Kaul said he went to the department lunchroom, where he found Chief Davis and reported that Hall had been hospitalized and had told Magliocco.

Aware that Officer Hall had been involved in a sexual relationship with one of her supervisors, Chief Davis did not inform the City's human resources department what he had learned about Officer hall's hospitalization. Instead, printed copies of text messages that we reviewed show that, on 12:02 p.m., December 9, 2022, Chief Davis texted Sergeant McGowan:

| | |
|---|---|
| CHIEF DAVIS:[13] | PMag[14] trying to put up smoking [sic] mirrors and it's going to come back to bite him. |
| SGT McGOWAN: | Really. Already? |
| CHIEF DAVIS: | he telling Konrad everything but I f**king her |
| SGT MCGOWAN: | Lmao |

The Initial Investigation having not yet begun, Chief Davis and McGowan speculated on December 11 how an investigation might proceed if Powell and Davis were interviewed:

| | |
|---|---|
| CHIEF DAVIS: | between you and I if it comes out about Lewis [Powell] and he hasn't said anything, he is toast |
| CHIEF DAVIS: | Supervisor and officer |
| CHIEF DAVIS: | at least demotion[15] |
| SGT McGOWAN: | I've told him until I'm blue in the face bro. He ain't listening. Wants to see how it's going to play out. Smfh |

...

| | |
|---|---|
| CHIEF DAVIS: | because we still have to find out the work part in all this[16] |
| SGT McGOWAN: | Thanks, yeah, he got mad at me because I yelled at him. |
| CHIEF DAVIS: | why you yell at him |
| SGT MCGOWAN: | Because that's how serious this s**t is. He ain't listening or thinking |
| CHIEF DAVIS: | he thinking but about his house |

---

[12] The Initial Investigation found that Officer Hall, depressed and drinking, had spent part of the evening of December 6, 2022, at the home of Officer Magliocco and his wife.

[13] When we showed Chief Davis the printout of this text message exchange, he denied sending the messages attributed to him and denied receiving the responses attributed to Sgt. McGowan. When we asked Chief Davis if he still had any messages with Sgt. McGowan on his personal phone, he produced it from his pocket and opened it to the text-message application. The oldest message there from Sgt. McGowan was December 14, 2022—five days after the exchange quoted above. Chief Davis told us he had deleted all messages prior to December 14, 2022, though he could not remember when. The messages on Chief Davis' phone from December 14, 2022, tracked the printout Mayor Cole had provided verbatim. We subsequently verified the December exchanges before December 14 by reviewing photographs of Sgt. McGowan's phone and message application for the dates in question.

[14] Chief Davis told us that "PMag" is a department nickname for Officer Magliocco.

[15] In our interview of January 23, 2023, Chief Davis disputed sending this message. The message, however, is consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

[16] In our interview of January 23, 2023, Chief Davis disputed sending this series of messages. The messages, however, are consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

| CHIEF DAVIS: | That's my boy but I can't save that |
| --- | --- |
| CHIEF DAVIS: | If Andrew [Patton] asked me right now and I said yes on speculation and she lies and says no my credibility is shot |
| CHIEF DAVIS: | If he says yes to me than I'm asked I can say I knew about the relationship and that satisfy city policy |
| CHIEF DAVIS: | I know this s**t from Sal and Cummings cause I knew about it and we Played damage control for both of them and kept it moving[17] |
| SGT McGOWAN: | That's my point exactly. We're going to have to watch this one play out. |

In fact, Chief Davis told no one with the City on that day, or the next, or the next, that he knew, at the time he sent these messages, that one of his female officers, suddenly hospitalized, had been sexually intimate with one of his sergeants.[18] When Director Patton confronted Chief Davis on December 12, 2022, with the information[19] that Officer Hall had been sexually intimate and participated in a semi-nude hot tub party with other officers, Chief Davis' response was not to disclose what he knew. It was to text McGowan:[20]

| CHIEF DAVIS: | ITS OUT IN HR TALKING ABOUT IT NOW |
| --- | --- |
| CHIEF DAVIS: | She told at the hospital |
| CHIEF DAVIS: | all bets off |

With Chief Davis silent, no investigation began until Mayor Cole received a tip on December 12 that Officer Hall had been intimately involved with other officers. By December 13, Sgt. Powell already was working to influence Officer Hall's cooperation with the Initial Investigation.[21] Indeed, both Officer Hall and Sgt. Powell initially denied any sexual relationship; three other male officers also initially denied sexual intimacy with Officer Hall.

But Chief Davis was not maintaining silence with all. The Initial Investigation reflects he participated in Patton's December 13 interview of Powell. The next day, Chief Davis texted McGowan:

| CHIEF DAVIS: | pissed at Lewis |
| --- | --- |
| CHIEF DAVIS: | then his ass throw yall in there was a HOE move |
| McGOWAN: | I am too. I want to be pissed more but I think he panicked. We didn't hit. |
| CHIEF DAVIS: | I believe you. |
| CHIEF DAVIS: | I wanted to say stop that bullshit right now. |

---

[17] In our interview of January 23, 2023, Chief Davis disputed sending this message. The message, however, is consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

[18] The contemporaneous text exchange between Chief Davis and Sgt. McGowan suggests both were far more concerned with the consequences of revelations than determining the truth and assisting a fellow officer in crisis.

[19] The Initial Investigation found this information came from Mayor Cole, who told Director Patton he had received it from an unnamed source.

[20] In our interview of January 23, 2023, Chief Davis disputed sending these messages. The message, however, is consistent with photographs of Sgt. McGowan's message application we reviewed for the date in question.

[21] Hall interview transcript, at 7 (Dec. 21, 2022).

As Chief Davis was providing this information to McGowan from one of the most sensitive interviews in the Initial Investigation, McGowan and Powell, apparently unknown to Chief Davis, were already engaged in "intimidation with intent to interfere with [the] investigation." Initial Investigation Report, at 13, by conspiring with themselves and with Hall to be untruthful in the investigation, a violation of § 9.7 of the Employee Handbook. Regardless of Chief Davis' knowledge of his friend's efforts to thwart the Initial Investigation, the release of information to McGowan violated Department regulations. See also General Order, La Vergne Police Department, § 39 ("Officers will maintain strict confidentiality for the information they received while in the performance of their duties and only release information as required by law as public information").

City policy requires employees involved in a "personal, romantic, or intimate relationship" to "disclose the existence of the relationship" to a supervisor, manager, city administrator, or the human resources department. La Vergne Employee Handbook § 3.4.C. "When a conflict or potential conflict arises due to the relationship affecting employment, the city reserves the right to make any and all employment decisions in the best interest of the city." Id.

Chief Davis owed an obligation to the City "for the administration and enforcement of the [City's] Personnel Regulations." Id. at § 1.5.C. He knew that Powell and Hall were involved in a sexual relationship[22] and that they had not publicly disclosed it as required by § 3.4.C. He knew it before the City began a lengthy and internationally embarrassing internal investigation. He attended interviews during the Initial Investigation, and did not disclose his knowledge to Director Patton during the Initial Investigation. He *never* disclosed his knowledge until Director Patton confronted him with printouts of his own text messages on January 6, 2023.

By his failure to so disclose and by his inappropriate sharing of information gained in a City investigation with persons conspiring to interfere with the Initial Investigation, we find Chief Davis violated City policy and impeded the Initial Investigation.

2. **Chief Davis facilitated a hostile work environment in violation of City policy and the rules of the La Vergne Police Department by his receipt of nude images and videos of female La Vergne officers, and his failure to report same to City officials**

Chief Davis admitted during the course of our investigation that he received a text image from Sgt. McGowan showing a Caucasian woman's bare buttocks and two videos showing a nude Caucasian woman masturbating. Chief Davis told us he believed the images to be of Maegan Hall. The text messages were dated October 31, 2022, approximately 6 weeks before Officer Hall was hospitalized. The undisputed exchange between Chief Davis and Sgt. McGowan is as follows:

---

[22] Chief Davis told us and Director Patton that he met with Sergeant Powell on December 9 and asked him whether he was sexually involved with Officer Hall. Davis said Powell denied the relationship. Powell would admit to the relationship during the Initial Investigation.

| | |
|---|---|
| CHIEF DAVIS: | You never sent me whatever |
| CHIEF DAVIS: | I'm on ole boy[23] |
| SGT McGOWAN: | Give me a few |
| SGT McGOWAN: | [Nude photo of woman's buttocks] |
| SGT McGOWAN: | [13-second video of woman masturbating] |
| CHIEF DAVIS: | She must be obsessed |
| SGT McGOWAN: | Oh hell yeah. That n_____ need to stop lol |
| CHIEF DAVIS: | Yep |
| SGT McGOWAN: | But dayum |
| CHIEF DAVIS: | It hard to look at her and not say, you know I know! Lol |
| SGT McGOWAN: | She's definitely got it |

On December 1, 2022, a week prior to Officer Hall's hospitalization, Sgt. McGowan sent Chief Davis another video of a nude Officer Hall masturbating, this one 30 seconds in length. The printed versions of the texts we reviewed, and that Chief Davis authenticated, do not reflect any conversation before or after the second video.

Chief Davis told us in his January 23 interview that he did not report or discipline Sgt. McGowan for sharing the nude photo and videos, nor did he counsel or speak with Officer Hall. Instead, only after learning Officer Hall had been hospitalized on December 8, Chief Davis told us he asked Sergeant Powell whether he had engaged in sex with Officer Hall. Chief Davis told us he accepted Powell's denial at face value and conducted no further investigation.[24]

Chapter 9 of the City Employee Handbook prohibits discrimination and harassment in the workplace. "Sexual harassment, which is harassment directed at an individual because of his or her gender, is one form of harassment prohibited under this policy." City Employee Handbook, § 9.2. "Sexual harassment can be conduct directed toward a man or a woman by either sex and includes…demeaning, insulting, intimidating or sexually suggestive written, recorded or electronically transmitted materials (such as email, instant message, and Internet materials." Id at § 9.2(5). Employees who are aware "that an individual's actions or words in the workplace constitute unwelcome sexual harassment" have "a responsibility to report the situation as soon as possible." Id. at § 9.2.[25]

We find that the photo and videos material Sgt. McGowan sent Chief Davis constituted "demeaning, insulting, intimidating or sexually suggestive written, recorded or electronically transmitted materials" prohibited by the City's anti-harassment policy. We further find that Chief

---

[23] "Ole Boy" is a nickname Chief Davis used to describe a personal burner cell phone. Chief Davis told us he no longer owns that phone.

[24] We asked Chief Davis if he had sought out Officer Hall to ask the same question. "No," he said. "I felt I didn't need to, based upon I had it."

[25] La Vergne Police Department General Order GO-300.01 states department policy: "Employees will not conduct themselves in an immoral, indecent, lewd, or disorderly manner. Additionally, employees will not conduct themselves in a manner that might be construed by an observer as immoral, indecent, lewd, or disorderly." It is impossible to regard the images, videos, and messages shared between Chief Davis and Sgt. McGowan on October 31, 2022, as less than "immoral, indecent, [or] lewd." Likewise, we find Chief Davis and Sgt. McGown violated Rule 22 under the General Order, entitled "Offensive Material," which states: "Department employees shall not possess, reproduce, circulate or post any material that may be considered offensive regarding…sex."

Davis did not report the receipt of the prohibited messages, much less "as soon as possible," as required by City policy.[26]

State and federal law define "hostile work environment harassment" as conduct that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Phelps v. State, 634 S.W.3d 721, 727 (Tenn. Ct. App. 2017)(quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). Under the Tennessee Human Rights Act, an employer may defend against a claim of hostile work environment harassment by presenting evidence that "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior [and that] the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." Parker v. Warren County Utility District, 2 S.W.3d 170, 176 (Tenn. 1999).

It is beyond the scope of this investigation to assess whether the City "exercised reasonable care" under Parker or whether any potential claimant availed himself or herself of available appropriate or available preventive or corrective opportunities. We do, however, find that Chief Davis neither corrected nor promptly reported the person who shared nude photographs and videos of a junior employee; that Chief Davis never informed the employee such images were shared; and that Chief Davis made no effort to determine where or how Sgt. McGowan obtained the nude images.

### 3. Chief Davis sought to mislead Patton and Richardson in his January 6 interview and this investigation by his unsupported assertions that printed copies of texts between he and Sgt. McGowan were inauthentic

Patton and Richardson interviewed Chief Davis on January 6, 2023. They showed him the printouts of the text messages quoted above, dated October 25, 28, 31, 2022, and December 1, 9, 11, 14, 2022. Chief Davis took exception with an investigation of messages he claimed were personal and unrelated to his role as Chief of Police. As the interview continued, he inserted claims of fabrication, suggesting the message printouts had been doctored to "set me up."

When we interviewed Chief Davis on January 23, 2023, therefore, we showed him the same message printouts. We provided him a complete set of the printouts and asked him to mark in blue ink the messages that he disputed sending or receiving. He did so, placing an asterisk and his initials beside messages he disputed. Chief Davis' objections were numerous. Many of his objections are noted above in footnotes; others are unnoted in this report because the questioned message did not form the basis of a finding.

Though Mayor Cole did not disclose his source of the text message printouts, all parties—including, most importantly, Chief Davis himself—accept the text message printouts came from former Sgt. McGowan. We concur. Indeed, they could have come from no one else. While Mayor

---

[26] Our investigation found Chief Davis received nude photographs and videos of women other than Hall. We did not investigate the particulars of these messages, as they were beyond the narrow scope of our investigation. We do find, however, that the volume of pornographic material passing through the Chief's personal phones should have put any reasonable supervisor on notice that the risk of a sexually hostile work environment in the Department was unacceptably high.

Cole refused to tell us the identity of his go-between source forwarding the information,[27] there is no question the source of the messages is McGowan and McGowan's phone.[28]

Also importantly, Chief Davis did not dispute the authenticity of many of the printed messages we showed him. Therefore, in order to accept Chief Davis' claim of tampering, one would have to imagine a person capable of inserting messages into a message chain such that they appeared as authentic on only one participant's phone. That Chief Davis told us he had erased all the relevant messages on his own phone only compounds the problems with his tampering theory's credibility.[29]

We took two steps to assess the authenticity of the disputed messages. First, we asked Chief Davis himself. He told us he no longer owned the messages on his "third" phone, which he had used for the October 2022 messages. He told us, however, he still had messages on his personal phone. He produced the phone during our interview and opened the messages application to his conversation with McGowan. There, we saw messages dated December 14 that exactly tracked the printouts the Mayor had produced. We assess the December 14 messages on the Chief's phone as evidence that, more likely than not, the prior messages from the same phone were authentic.

In an effort to further confirm the messages' authenticity, we asked Mayor Cole on January 30 and February 3 to ask his source to photograph McGowan's telephone, showing the phone and open message application to show the messages in question on the phone's screen. In response, we received two sets of documents on January 31 and February 5. They were as we requested, photographs showing a mobile phone with the phone's message application open to the same exchange between McGowan and Chief Davis. The photographs tracked the printouts verbatim.

"Employees are also obligated to cooperate in every investigation of harassment," states Policy 9.7 in the City's Employee Handbook. "The obligation includes, but is not limited to, coming forward with evidence, both favorable and unfavorable, for a person accused of such conduct; fully and truthfully make written reports or verbally answer questions when required to do so by an investigator." Policy 9.7 is not to be taken lightly. It is one of the City's few

---

[27] We are compelled to note a matter not within the direct scope of our investigation. Mayor Cole never misled persons conducting the Initial Investigation or this Investigation. The information he provided to Director Patton and to us proved reliable. He provided that information when persons within the Police Department, including Chief Davis, were not forthcoming with same. He responded promptly and helpfully when asked to provide corroborating evidence of Chief Davis' text exchanges with Sgt. McGowan. Mayor Cole did not, however, identify the source of his information to Director Patton during the Initial Investigation or in our investigation. Though Mayor Cole informed Director Patton *after* his review of the Initial Investigation that his source was not, in fact, a police department employee, Mayor Cole refused to name his source. This is not a violation of City policy, as the elected officials of the City are not bound by the City's employment policies. See Employee Handbook, § 1.4.B, "Non-Covered Positions."

[28] We make no representations or findings regarding former Sgt. McGowan's credibility. The Initial Investigation found he misled Patton by initially denying his own sexual relationship with Hall and that he attempted to procure false responses from others. McGowan's City personnel file, which we reviewed, reflects he was disciplined November 6, 2007, for having sex "while on duty as a Police Officer in and for the City of La Vergne" and that he lied when questioned about it then, too. We do find the photographs of McGowan's phone that we asked the mayor to procure by way of his source to be consistent with the unsolicited printouts the Mayor originally received, the undeleted messages on Chief Davis' phone, and the printed messages Chief Davis does not dispute. For these reasons, we assess the message printouts that Mayor Cole received on January 5 are accurate reproductions of text message conversations between Chief Davis and then-Sgt. McGowan.

[29] Chief Davis told us he had deleted messages prior to December 14 as part of a routine message deletion process.

employment policies that includes its own disciplinary standard: "Disciplinary action may be taken against an employee who fails to report instances of harassment, or who fails or refuses to cooperate in the investigation of a complaint of harassment, or who provides false testimony during the course of an investigation." Id.

We find Chief Davis did not "fully and truthfully...answer questions when required to do so by an investigator" regarding his communications with Sgt. McGowan. We find his assertions that the messages were "fabricated" or "planting" misdirecting at best, and misleading at worst, compelling a conclusion that he violated City Policy 9.7 in his January 6 interview with Richardson and Patton and in his Jan. 23 interview with us.

## CONCLUSION

Chief Davis was aware of inappropriate sexual activity between officers, including superior officers and subordinates, as well as the shockingly widespread sharing within his Department of nude photos and videos of female officers. Chief Davis admittedly received some of these inappropriate photographs and videos. He never voluntarily disclosed doing so. Chief Davis never reported this activity to the City's Human Resources Department, nor did he discipline any of the officers involved. When Officer Hall was hospitalized December 8, 2022, Chief Davis did not report his prior knowledge of her sexual activity with Sgt. Lewis Powell. When Hall and Powell denied inappropriate sexual activity during the Initial Investigation, Chief Davis did not disclose to Director Patton or others he knew, or even believed, them to be lying. Finally, the documentary evidence available to us compels a conclusion that Chief Davis misled Director Patton in his January 6 interview, and that he misled this investigation in his January 23 interview.

We find, therefore, that by failing to report or discipline officers engaged in inappropriate sexual activity, withholding information from City officials conducting the Initial Investigation, and facilitating a hostile work environment in the sharing of nude images of subordinate employees, Chief Davis impeded the Initial Investigation contrary to City policy and permitted— if not encouraged—conduct potentially contrary to state and federal law. We further find, on the basis of the documentary evidence available to us, that he impeded the city's January 6 investigation of his prior knowledge and this investigation by untruthful responses regarding his text message correspondence with Sgt. McGowan.

One final note: Much has been written in the popular media about a particular incident detailed in the Initial Investigation Report, a so-called "girls gone wild hot-tub party," in reference to exploitative videos of young women heavily marketed in the 1990s. This matter, however, is neither about girls nor "going wild." It has cost persons their careers, their health, and their families. It has cost the City and the community. Given time, the costs will rise and spread, even to the many officers who upheld their oaths, the City officials who acted honorably to uncover the truth, and the innocent friends and families of those who did not.

Responsibility also is shared. No one person is at fault for these events. In this matter, however, our investigation found that one person possessed a unique combination of information, authority, responsibility, and opportunity to change the course of these events. And, that Chief Davis did not.

This is the conclusion of our report.