**Wednesday, December 28, 2022**

Complainant: Mayor Jason Cole through unknown source initially. Revealed to be Sergeant Ty McGowan

Subjects: Officer Maegan Hall; Officer Patrick Magliocco; Sergeant Lewis Powell; Officer Larry Holladay; Officer Juan Lugo; Sergeant Ty McGowan; Detective Seneca Shields; Officer Gavin Schoeberl

Witnesses: Lieutenant David Durham; Bethany Smith (HR); Leah Presley (HR)

Department Head: Chief Burrel Davis

Investigator: Andrew Patton, Director of Human Resources

**Background**:

On Monday, December 12, 2022, Director of Human Resources Andrew Patton received a phone call from Mayor Jason Cole. Mayor Cole reported that he had received information from a source (name unknown) reporting that Officer Maegan Hall was having intimate relationships with other members of the La Vergne Police Department. Specifically with Sergeant Lewis Powell, Officer Patrick Magliocco (including a 3-way with his wife), and Officer Larry Holladay. Mayor Cole also mentioned a "girls gone wild" hot tub party at Sergeant Eric Staats house.

**Allegations:** *(including those initially reported and those learned throughout the investigation)*

Sexual Relationships - unreported: Hall engaged Magliocco in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Powell in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Holladay in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Lugo in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged McGowan in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Relationships - unreported: Hall engaged Shields in a sexual relationship that was not reported to leadership (per Employee Handbook 3.3 – page 13).

Sexual Activity on duty: Hall engaged Powell in sexual acts while on duty and inside city owned property.

Sexual Activity on duty: Hall engaged Shields in sexual acts while on duty and inside city owned property.

Sexual Harassment: Hall sent explicit photos and videos to multiple co-workers including McGowan, Holladay, Magliocco, Shields, and Schoeberl (per Employee Handbook 9.2 – page 51).

Sexual Harassment: Male members sent explicit photos to Hall (per Employee Handbook 9.2 – page 51).

Workplace Violence: McGowan came into the HR office and put his hands around the neck of Smith. This act was witnessed by Presley (per Employee Handbook 9.3, - page 51 & 9.8 – page 55).

**Intimidation with intent to interfere with Investigation**: Powell and McGowan conspired to be untruthful during the investigation. (per Employee Handbook 9.7 – page 55).

**Interviews**: *(All interviews recorded and full transcripts provided with report)*

Patton spoke with Magliocco on 12/13/22 in the HR office along with Chief Davis. Magliocco signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Magliocco, when asked about intimate relationships within the second shift at LPD, said that he was aware of conduct that was sexual in nature. Magliocco told Patton that he was aware of Hall and Sgt. Powell. Magliocco said that Hall had told him about Powell's "big black dick". Magliocco said he was aware that Hall had given Sgt. Powell a blowjob while on duty at the substation. Magliocco also said he was aware that Hall and Holladay had kissed while at a shift party to watch a NFL football game at Holladay's house. Magliocco admitted to Patton that in the Spring of 2022, he and his wife had decided on having an open marriage and that Hall had asked him about "doing things" between he, her, and his wife. Magliocco told Patton that at one party, Hall and Magliocco's wife started kissing and Hall's husband came in the room and seemed upset. The next day on-shift, Magliocco asked Hall about the husband's reaction, since Magliocco was under the impression from Hall that her marriage was open as well. Hall said, "He really wasn't on board." Magliocco admitted to Patton of having sexual intercourse with Hall on numerous occasions.

Magliocco also reported that Hall asked him to borrow $50.00 one time because she wanted to get a hotel room but did not want her husband to know about it. Magliocco said he needed the money because he was going to Florida on vacation the next day.

Magliocco expressed concern over the mental health of Hall. Magliocco reported knowing of excessive drinking on the party of Hall, even showing up intoxicated at his house in December 2022. Magliocco also reported that Hall drank more while at his house and that he knew she was intoxicated when she left and drove home.

Magliocco admitted to knowing and being at the "hot tub party" but confirmed it was on Eric Staats houseboat and not his house. Magliocco told Patton it was Memorial Day and it included David Durham (and family), Eric Staats (and family), Hall, and himself. Magliocco said that Staats, himself, Durham and Hall were in the hot tub when Hall's top came off revealing her breast. Magliocco said that Staats helped Hall put her top back on.

Regarding the concern over Hall's mental health, Magliocco reported knowing that Hall unloaded her weapon and dry fired the gun at her head "so she could hear what it sounded like." Magliocco admitted not reporting that to anybody. Magliocco also reported knowing that Hall voiced "harmful thoughts" and on multiple occasions said that she should not be alone. Magliocco reportedly called Staats on 12/8/22 to report these concerns to leadership.

Magliocco reported that Hall had sent nudes of herself to members of the LPD staff including himself and Lugo. Magliocco reported that Lugo came to him asking if he had received photos from Hall. Magliocco confirmed he had, and Lugo said his also included an invitation for a "booty call."

In a second interview with Magliocco on 12/20/22, Magliocco was asked for additional information and fully cooperated with the investigation. Magliocco showed Patton texts on his personal phone between Hall and him. Patton confirmed that Hall and He had communicated during the investigation with Magliocco telling Hall he really should not be commenting on the case. Patton saw a new nude photo of

Hall on the text string. Additionally, confirmation of Hall coming over to Magliocco's house on 12/6/22 was seen. Hall asked Magliocco if "she and Amy could make out." Amy is Magliocco's wife. Magliocco confirmed to Patton that Hall told her specifically about her involvement with Sgt. Powell. Magliocco said that Hall even came to work once upset because she and Powell had ended it due to Powell not wanting his wife to find out and concern of his position at LPD. Magliocco also told Patton that Hall had told the same thing to his wife, Amy, while at their house one night.

Magliocco was asked additional questions regarding the houseboat event. Magliocco shared new details including confirmation that Hall pulled him into the restroom where she asked him if he "wanted to fuck." Magliocco also shared that later in the evening, He and Hall walked up to the top of the hill where she gave him a blowjob.

Patton spoke with Powell on 12/13/22 in the HR office along with Chief Davis. Powell signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Powell described the culture of second shift as "running wild" and officers being "too mouthy." Powell also said that Sgt. Staats can be "too playful" with those who report to him. Patton asked Powell about second shift off-duty hangouts, and Powell said he was aware of them. Specifically, Powell said he knew that Hall and Magliocco hung out. Powell also said he knew that Holladay had a football party and Hall and Magliocco attended. Powell said he had heard that Hall and Magliocco (both married) had open marriages.

When asked about a "girls gone wild" hot tub party, Powell denied knowing anything about it, other than hearing the guys wanted a day out. Patton asked Powell about hooking up with Hall, and Powell denied any sexual relationship. Patton asked about sexual acts while on duty at the substation, and again Powell denied. Powell admitted to being at the substation. Powell admitted to Hall being at the substation. Powell admitted to both her and Hall being at the substation inside, but denied any sexual acts happened.

Patton asked Powell who else he might have heard about that could be involved with Hall and Powell reported that McGowan told him that Officer Seneca Shields and Hall hooked up. Powell also reported that he heard McGowan and Hall had hooked up but did not recall who told him that. Powell reported that Holladay told him they "hung out" at someone's house one time. Powell told Patton "everybody knows she has multiple partners."

When asked about Hall sending naked photos, he denied knowing anything about that.

Due to the nature of the allegation and the leadership that Powell has on shift, the decision was made to suspend Powell with pay pending the outcome of the investigation into sexual acts on duty inside city property. Powell left the HR office and returned home until notified by HR. On 12/16/22, after numerous other interviews, including Hall, it was determined that Powell would return to full duty and was removed from administrative leave. Powell was told the investigation was still ongoing.

In a second interview with Powell on 12/22/22, Patton asked Powell again if he and Hall had sexual relations while on duty and inside a city building. Powell again denied. Patton asked Powell if he had spoken to Hall, and he denied. Patton told Powell that he was aware that they both were at Planet Fitness in Murfreesboro on 12/14/22, and Powell denied. Patton told Powell that the City has a corporate relationship with Planet Fitness and I know he was there. Powell said, "I did not check in." Patton said, "I know, there are cameras outside." After that, Powell lowered his head and confirmed that he and Hall had sexual interaction while on duty inside the Police Substation. Powell confirmed that Hall gave him a

3 | P a g e

blowjob. Powell confirmed that he and Hall met at Planet Fitness. Powell confirmed they discussed the investigation and Powell told Hall he denied all the allegations during his interview with HR. Powell confirmed that he had spoken and texted with McGowan. Powell told Patton that he and McGowan met down the street from McGowan's house. Powell confirmed that he and McGowan talked about the denials they provided to HR and that they would stick to that story. Powell also confirmed that he saw Hall's car at McGowan's house recently. Powell confirmed that McGowan told him that he and Hall had "hooked up." Patton asked Powell if McGowan told him they had sex, and Powell said he never said that just that they had hooked up. Patton asked Powell if he thought it was possible that McGowan and Hall had sex, and Powell nodded his head in affirmation. Powell also confirmed that Holladay told him that he and Hall had "hooked up."

On 12/20/22, Mayor Cole stopped Patton to ask if the investigation was completed. Patton told the Mayor that it was ongoing and messy. During the course of that conversation, Mayor Cole said he had recently overheard that Powell had been a victim in a domestic disturbance with his wife who "beat the shit out of him." Cole said that no police report had been filed. Patton believed Mayor Cole had overheard this, as told, however in further investigation, Patton believed this information came to the Mayor from McGowan.

During the interview with Powell on 12/22/22, Patton asked Powell if had recently been involved in a domestic disturbance. Powell confirmed that he had been saying, "My wife beat the shit out of me." Powell shared that he had told his wife some of the information regarding these concerns. Powell shared that his wife had a divorce attorney and he would most likely lose his children. Powell confirmed to Patton that he did not report the incident to Police. After the admission of sexual relationships on duty, Powell was placed (again) on administrative leave with pay pending the outcome of the investigation.

Patton spoke with Durham on 12/13/22 in the HR office along with Chief Davis. Durham signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Durham told Patton he was aware of the suicide attempt and concern regarding hall, saying the information came from Executive Administrative Assistant Amber Dixon. When asked about sexual relationships within second shift, Durham said he did not have any information. When asked about a hot tub party with Eric Staats, Durham said that he and his family were invited to stay on Staats' houseboat Memorial Day weekend. Durham said his family arrived along with Staats' family. The next morning Durham woke up and saw Hall on deck having breakfast. Durham reported that Magliocco showed up a little later. Durham said there was heavy drinking on board and Hall had fallen down the stairs at one point. Durham reported that he, his wife, and one child shared one bedroom; his other daughter and friend shared one bedroom; hall was in one bedroom; and Magliocco slept on the couch. Durham reported that at one point Staats told him that Staats thought Magliocco and Hall had gone into the bathroom together. Later Staats corrected the statement saying that Hall went in alone. Durham said that he had talked to Magliocco and Hall, while on board, about not cheating on your spouse. Durham said that he shared his story of being unfaithful to his own wife with them. Later that night, Durham, Staats, Magliocco and Hall were in the hot tub together. Durham reported that Magliocco was pouring vodka down the throat of Hall and Durham made him stop because of how intoxicated she already was. Durham confirmed that Hall's top came off and Staats helped put it back on because "he was trying to protect her." The next day, Magliocco's wife came on the boat for a few hours and then left. Durham denied any physical contact with Hall.

In a second interview with Durham on 12/20/22, Patton asked Durham to clarify information received throughout the investigation. Patton asked Durham if he vaped, and Durham said, "Yes. One or two times. Not regularly." Patton asked Durham if he went into Hall's room on the houseboat to get her vape. Durham replied. "Yes. I liked the taste of the flavor of the vape, and I went in and asked if I could take a hit off the vape. I did and then walked out." Patton asked Durham if he ever saw Hall and Magliocco go into the restroom together on the boat. Durham denied, saying only that Staats told him about it and then clarified it did not happen the way Staats thought it did.

Patton spoke with Holladay on 12/14/22 in the HR office along with Chief Davis. Holladay signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Holladay was asked by Patton if he knew of any intimate relationships within second shift. Holladay replied, "No." Patton asked Holladay if he knew if any mental health concerns among members at LPD. Holladay said the he heard Hall had some. Holladay reported that sometime in the past (date unknown) that Hall had told him she was "having a bad day." Holladay said he did not think it was of concern and did not report this to anybody. Holladay reported that he had people over to his house to watch a football game. Holladay said Hall, Magliocco, and Officer Womack attended. Holladay reported heavy drinking at the party. Patton asked Holladay to explain what happened at the party that could have been inappropriate of an intimate nature. Holladay reported that there was talk of a threesome with him, Hall, and Holladay's ex. Holladay reported nothing happened at the party. Patton asked Holladay if he kissed Hall at the party, and Holladay said, "I don't remember. It's possible." Patton asked Holladay if he had sexual intercourse at any time with Hall and he reported yes. Patton followed up on the initial question of the investigation on if Holladay was aware of any intimate relationships within the department, in which he answered no, and Holladay said he was "thinking about others, and not himself." From that point, Holladay reported multiple sexual encounters with Hall at his house and hotels. Holladay reported on one occasion he met Hall at Sam's Sports Bar, and David Durham walked in with his daughter and sat with him. Hall came later. After Durham left, Hall and Holladay went to a hotel for sex. Holladay reported that the last sexual encounter with Hall to be middle of November (about 3 – 4 weeks from the interview date). Patton asked Holladay about the hot tub party at Staats, and he denied having any information about that event.

In a second interview on 12/27/22, Patton asked Holladay again about any knowledge of information that Hall was intimate with other members of the La Vergne Police Department. Holladay provided no additional information. He was unaware how other members got his name, but did not provide any additional names of engaged members.

Patton reached back out to Mayor Cole on 12/13/22 and requested that his source meet with me. Those exchanges took place over text on Patton's city phone. The Mayor reported that the person was unable to meet with me because they were involved in a "bust" operation. Patton, through normal work, confirmed with Chief Davis that the operation scheduled for that day had been cancelled. Patton texted the Mayor and asked if the meeting could be set up. Patton received no immediate response. Later that day, Patton received a pin location in Smyrna and 2:00pm on 12/14/22 for the meeting. Patton arrived at the pin location – Nice Mill Dam at 1:46pm. At 1:49pm, Sgt. Ty McGowan pulled next to Patton and rolled the window down to say "follow me." McGowan pulled out and Patton followed. At 2:03pm, Patton and McGowan pulled behind baseball fields and the Tennessee National Guard facility in Smyrna. Patton and McGowan got into McGowan's truck. Patton asked McGowan why we had to meet here and why we moved from Nice Mill Dam. McGowan said he wanted to make sure that I was not followed. McGowan

said that we were here because the Mayor had asked him to meet with Patton. Patton told McGowan that he was conducting an interview into a sensitive matter regarding second shift, and McGowan looked confused and said, "Ok, that's not why I'm here." McGowan told Patton that he did not go to the Mayor on the morning of 12/12/22 to report concerns, and was told by the Mayor to meet me. Patton asked McGowan who was talking to the Mayor if it was not him, and McGowan replied, "I don't' know." Patton told McGowan that he was here to talk about concerns around Officer Hall. McGowan said he would tell me anything I wanted to know and that "everybody talks to me. I know everything about everybody."

McGowan pulled out his personal phone and showed Patton texts between himself and the Mayor concerning the meeting. McGowan also showed Patton texts between himself and Hall. Hall texted McGowan on 12/4/22 saying that she did not want to be alone and asking if she could come over to his house. After some discussion, it was confirmed that Hall could come over. Hall told McGowan that she would dress cute. McGowan said that nothing happened between him at Hall while at his house. Hall wanted to talk about her mom who was suicidal, and that her dad was not taking it seriously. McGowan reported to Patton that he knew about a get together at Hall's house with Hall, her husband, Magliocco and his wife. McGowan reported that Magliocco's wife and Hall's husband went to a back bedroom together and that Hall and Magliocco took that to mean the "swap" was on and they proceed to have sex. McGowan told Patton that Hall's husband confronter her about cheating.

McGowan also shared details on the hot tub party at Staats boathouse. McGowan shared the same details as above, but added that Staats placed Hall into her bedroom after the hot tub incident. Hall told McGowan that Durham came into her room and took a hit on her vape and then walked out.

McGowan said that he heard that Sgt. Powell and Hall might have gotten together but never heard anything about it being on-shift. McGowan had no information on Hall and Holladay.

When asked if McGowan had ever received nude photos from Hall, McGowan said yes. McGowan handed his personal phone to Patton with permission to view the text exchanges. Patton viewed multiple nude images of Hall and a few videos of Hall performing sexual acts on herself. Patton also read text messages where she was asking McGowan to come "fuck her and drag her around by her hair." There was no visual evidence that McGowan ever engaged in those text exchanges.

On 12/21/22, Patton asked Mayor Cole if he had "received any new information." Cole said that no he had not, and then grabbed his personal phone and showed Patton two missed calls that morning from McGowan. Cole told Patton that he was "ignoring the calls from McGowan because he was still pissed at him for telling me he didn't know why he was at the meeting on 12/14/22." Cole told Patton "he (McGowan) absolutely called me to tell me that information." Patton told Cole that he should be cautious as Cole might be getting "set up."

In a second interview, and the first "officially" inside the City on 12/22/22, Patton confronted McGowan about the inconsistency in the initial meeting and information Patton had received about McGowan being in a sexual relationship with Hall. Overall, throughout the interview, McGowan was not cooperative, rude, and extremely verbally aggressive. McGowan denied having sex with Hall. McGowan denied having communication with Hall regarding the investigation. Patton asked for any information that McGowan had regarding Powell having sex or sexual acts with Hall and McGowan finally admitted to knowing that Powell had sex with Hall. McGowan denied knowing about it being on duty. McGowan denied the accusation of sending nude photos to Hall. Then, McGowan asked Patton to leave the room so he could

speak with Chief Davis alone. When Patton was asked to come back into the room, McGowan struggled to share that when Hall was a candidate and in process of being hired, Hall and her husband, McGowan, and another female met up at her house. During that meeting, Hall was naked, the other female got naked, and Hall's husband got upset. During that visit, McGowan admitted to taking out his penis with Hall in the room and taking a photo of it. He sent that photo to Hall. McGowan continued to be verbally aggressive and interrupting Patton with questions that Patton told McGowan that clearly he did not want Patton to ask more questions. McGowan told Patton he could continue. Patton asked McGowan if in the past he told Hall that "if she ever wanted to just use him for sex, let him know." McGowan continued to deny. McGowan confirmed that Hall had been to his house on 12/5/22 and provided details of the visit including that she was in his bedroom at one point.

On 12/15/22, Bethany Smith came to Patton to explain a situation regarding McGowan in the HR office. Smith provided a written statement on what happened. Smith said, "One afternoon about a month ago Ty McGowan had come into Human Resources. He spent time chatting and cutting up with Leah (Presley) and myself. After about 10 minutes, I turned back around at my desk to go back to work. The next thing I knew he, Ty, had come up behind me, placed his hand around my throat, and began to squeeze. I froze. I could not say anything, I just sat there. I felt uncomfortable, like a major boundary had been crossed, and violated. I just wanted to crawl in a hole and cry and he was smiling and laughing." Patton reached out to Presley for a written statement as well. Presley said, "Sometime in September, Ty McGowan came into the Human Resources office to talk with Bethany and myself. It was casual talk, chitchat and nothing out of the ordinary. Bethany was sitting at her desk, and I was sitting at mine. About 10 minutes after the conversations, I was getting back to work and Bethany was too. All of a sudden, Ty stands up from the office chair he was sitting in and grabbed Bethany's throat. I could not see her face and did not hear her say anything while this was happening but he was smiling and talking to her about something. I did not hear the words he was saying as I was taken back by him grabbing her throat. It happened for a few seconds or so and he let go. Bethany was laughing and cutting up after the initial act, so initially to me it did not seem alarming. Immediately after him (McGowan) letting go he came into the back office where I was sitting and tried to what seemed like, hug me. I do not engage in those types of things and (I) said something along the lines of "you got the wrong girl, pal". He respected that, chatted a few more words to Bethany before exiting the Human Resources office. Bethany and I did not discuss the event until recently, in which I learned she felt threatened and uncomfortable. I wish I had reported the incident when it initially happened. This was a learning experience for me and in the future will make the decision to report it regardless of the impact it seemed to have had. I apologize for not doing so."

Patton asked McGowan to explain what happened in the HR office with a member of Patton's team. McGowan laughed and said he did not know what happened. Patton told him that he came into the HR office and placed his hands around the neck of HR Assistant Bethany Smith. McGowan laughed and said, "Yes, it happened. He was playing around and thinks that a member of the maintenance staff might have seen him." Patton told McGowan that the act was reported to him by a witness and when Patton spoke with Smith that she confirmed the event happened and that it was strange and odd. Patton spoke to Employee Engagement Administrator Leah Presley, who told Patton that she witnessed the event between Smith and McGowan and could not figure out why someone would do that.

Patton pressed McGowan knowing about the meeting that the Mayor had set up with Patton on 12/14/22, and McGowan continued to deny knowing why he was asked to meet with Patton. Patton then asked

McGowan multiple times, if he was saying the Mayor was lying, and McGowan refused to answer that question. Patton told McGowan that he knew that McGowan had called the Mayor twice on 12/21/22 and that the Mayor did not pick up. McGowan confirmed. Patton asked McGowan why the Mayor was suddenly ignoring his phone calls, and McGowan did not have an answer to the why. Patton shared this information to show McGowan that Patton knew of the truth behind how the information was first revealed and that it came from McGowan to the Mayor directly.

Based on the information received in this investigation, along with the previous (2007) history of McGowan engaging in sexual relationships with employees, and the confirmed allegation of a workplace violence act, McGowan was placed on administrative leave with pay pending the outcome of the investigation.

Patton spoke with Hall on 12/16/22 with HR leader Leah Presley in the HR office. During the conversation, Patton received confirmation that Hall was involved in a sexual relationship with Holladay. Those encounters happened off shift according to Hall and happened at his house and hotels. Hall denied having any sexual relationship with Powell. Hall denied having any sexual relationship with Magliocco. Hall denied having any interest or participating in any threesome conversations. Hall confirmed the hot tub information received and confirmed that she was heavily drinking and that her bikini top came off in the hot but and that Staats helped her put it back on. Hall confirmed falling down the stairs on the houseboat. Hall confirmed sending nude images to other officers on shift including Holladay, Magliocco, and Officer Schoeberl. Hall denied sending any nude images to Sgt. McGowan.

Hall called Patton on 12/19/22 and shared that wanted to "come clean" on something. Hall told Patton that she had not been honest on one part of the investigation. Hall confirmed that she did have a sexual relationship with Magliocco. Hall said it happened 3 – 4 times, but never on duty. Hall said she "did not like to lie, and wanted to tell me." Hall also confirmed that she and Magliocco had discussed having a threesome with Magliocco's wife; however, nothing ever happened on that topic.

In a second interview with Hall on 12/21/22, Hall was asked to confirm information revealed during the investigation. Hall confirmed that she and Magliocco went into the restroom on the houseboat and had sex. Hall confirmed that she went to the top of the hill with Magliocco and gave him a blowjob. Hall confirmed that she gave a blowjob to Sgt. Powell while on-duty at the Police Substation. Hall confirmed she had sex with Lugo at a hotel in Murfreesboro, 2 – 3 months ago, after meeting him at the Go Cart USA center. Hall confirmed that she met Powell at Planet Fitness in Murfreesboro. Hall told Patton Powell told her that he denied everything to HR. Powell told Hall that he and McGowan had met and talked. Powell told Hall he told McGowan he denied everything and McGowan told Powell he denied any sexual involvement with Hall at all. Hall confirmed she had sex twice with McGowan, most recently on 12/4/22 at his house in La Vergne. Hall told Patton that she and McGowan had been "close forever and one time he told her to "use me" if she ever wanted to have sex." Hall confirmed she and McGowan would send nudes back and forth. Based on the information confirmed in this interview, Hall remained on administrative paid leave pending the outcome of the investigation.

Patton set up a meeting with Officer Juan Lugo on 12/19/22. Officer Lugo did not show up for that meeting and did not notify anybody that he was not planning to attend. Lugo told Amber Dixson (in Chief Davis's office) that he had a childcare issue. The meeting was rescheduled for 12/20/22. Lugo met Patton in the

8 | P a g e

HR office along with Chief Davis. Lugo signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Lugo shared with Patton that he hangs out a lot with Officers Magliocco, Schoeberl, and Liedtke. Lugo told Patton that if there is a female present with drinking, he has to obtain permission from his wife to attend. Lugo told Patton he is aware of intimate relationships on second shift, but nobody wants to say who it is. Patton pressed Lugo multiple times for names, and Lugo said he did not know. Lugo was asked if he had received any nude images of any other officers and he told Patton, "No." Patton told Lugo that he was aware that he had received a nude image and went to Magliocco because Lugo was concerned about getting it. Lugo confirmed he got a nude of Hall through Snapchat. Lugo confirmed he went to Magliocco and told him he received it because he had not ever gotten anything like that before. Chief Davis asked Lugo if he had ever sent a dick pic to anybody. Lugo said, "Yes, I sent a dick pic to Hall." Lugo said Hall asked him if he would be "down for a quickie." Lugo said he denied the invitation. Patton revisited the question of who on second shift was having sexual relationships, and Lugo said he did not know any names.

In a second interview on 12/22/22, Lugo was reminded by Patton of the Garrity that he signed. He was asked by Chief if any questions about it, and Lugo had responded with, "No." Patton told Lugo that he knew he had lied during the first interview and asked Lugo if he had sexual relations with Hall. Lugo said "No." Patton asked Lugo if he ever had met up with Hall and he shared a story about a group hang out where he thought she might have been there. Patton told Lugo he knew about the Go Cart USA meet up in Murfreesboro and the fact that they went to a hotel room to have sex. Lugo then confirmed the meet up and confirmed having sex with Hall. Lugo said it was the only time. Patton then told Lugo to tell him who else had had sex with Hall. Lugo said he knew that Powell and Hall had been together. Based on the information in this case, and the fact that Lugo had lied during the investigation, Lugo was placed on administrative leave with pay pending the outcome of the investigation.

Patton spoke with Seneca Shields on 12/27/22 in the Chief of Police office along with Chief Davis. Shields signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Shields was asked if he knew why he was being asked to talk to Patton. Shields said that he assumed it had to do with the issues around Officer Hall. Patton asked Shields who he had knowledge about that was intimate with Hall. Shields refused to provide names. Patton asked a second and third time, and again, Shields decline to provide any names. Patton asked Shields why his name was being told to me as someone who was involved sexually with Hall. Shields said, "I have never had sex with Maegan Hall." Patton rephrased the question and asked if he had any sexual encounter with Hall. Shields confirmed that Hall had given him a blowjob in the Police Gym behind the Police Station. Shields told Patton that he was on-duty at the time of the incident and he went back to his desk when finished to end his day. Shields confirmed that he had Hall had been sexual on texts and flirting for some time. Shields confirmed that he had both send nudes to Hall and received nudes from Hall.

Patton spoke with Gavin Schoeberl on 12/19/22 in the HR office along with Chief Davis. Schoeberl signed the Notification of Rights – Garrity Warning document presented by Chief Davis. Patton asked Schoeberl about second shift post-shift hangouts and Schoeberl said that it is normally himself, Lugo, Hall, Magliocco, and Liedtke. Schoeberl confirmed that heavy drinking takes place at many of the gatherings. Schoeberl did not have any knowledge of the alleged "hot tub party." Patton asked Schoeberl if he ever received nudes via his cell phone and Schoeberl confirmed he had from Hall. Schoeberl said that about 1-2 months ago Hall offered to send him a photo of herself. Schoeberl also told Patton that, while on

duty, he and Lugo, and Hall were in a circle behind PD talking and joking about sexual things – specifically penis sizes. Schoeberl confirmed he showed the group a photo of his penis. According to Schoeberl, Lugo showed a photo of his penis as well. Schoeberl said he asked Hall to snapchat him a photo of her. Schoeberl told Patton he received a video from Hall on snapchat. Schoeberl said that Hall told him not to tell anybody.

**Findings**:

Based on the information received through the course of the investigation, Patton **substantiates** the allegations of Sexual Relationships - Unreported against Hall, Magliocco, Holladay, Shields, and Lugo. All parties admitted to being in a sexual intimate relationship with Officer Maegan Hall.

Patton **substantiates** the allegation of Sexual Activity while on duty against Shields. Shields confirmed that they met at the Police Department gym and Hall performed oral sex on him while actively on-duty.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #10.**   *Neglect of Duty.*  Gross neglect of duty is any action or omission of action, which may be injurious to the member, fellow officers or the general public.  A member may be immediately relieved of police responsibility for gross neglect of duty.

**Rule #11.**   *Conduct.*  The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

   a.   Association with known criminals;

   b.   By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

   c.   By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Patton **substantiates** the allegation of Sexual Activity while on duty against Hall and Powell. Both Hall and Powell have confirmed that they met at the Police Substation and performed oral sex while actively on-duty

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #10.**   *Neglect of Duty.*  Gross neglect of duty is any action or omission of action, which may be injurious to the member, fellow officers or the general public.  A member may be immediately relieved of police responsibility for gross neglect of duty.

**Rule #11.**   *Conduct.*  The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

   a.   Association with known criminals;

b.  By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c.  By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Patton **substantiates** the allegation of Sexual Harassment against Hall, Schoeberl, Lugo, Holladay, Shields, and McGowan. Hall admitted to sending nude images to other co-workers. Patton viewed those images and sexual videos personally from McGowan. Hall lied during the course of the investigation by denying sending those images and videos to Sgt. McGowan. Pornography and offensive pictures in the workplace are forms of sexual harassment. These items are offensive, inappropriate, and can lead to a hostile work environment for other employees.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.**   *Obedience to Rules, Regulations, Laws.*   All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.**   *Conduct.*   The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a.  Association with known criminals;

b.  By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c.  By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Patton **substantiates** the allegation of Workplace Violence against McGowan. McGowan admitted to coming into the HR office and placing his hands on the neck of Bethany Smith. McGowan claims it was playful however it was unwanted and an aggressive form of physical contact that is not permitted at work. Patton **partially substantiates** the allegations of Sexual Relationships – Unreported, Sexual Harassment, lying during the course of the investigation, intimidation, and conduct unbecoming of an officer against McGowan. While McGowan denied those allegations, behavior was reported and confirmed by Powell and Hall. In addition, Mayor Cole provided information to directly conflict with answers by McGowan during the investigation.

Patton **substantiates** the allegation of Intimidation with intent to interfere with Investigation against McGowan, Powell, and Hall. Confirmation from Powell and Hall showed intention to lying to HR about involvement including sexual activity. McGowan denied this allegation, however the facts show it is more likely than not that it did happen as told.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

**Rule #12.** *Truthfulness.* Personnel of the LaVergne Police Department shall speak the truth at all times and under all circumstances, whether under oath or not.

**Conclusion**:

Patton recommends **Termination of Employment for Hall** based on the violation of sections 3.4, 9.2, 9.3, and 9.8 of the Employee Handbook regarding sexual activity while on duty, sexual harassment, conduct unbecoming of an officer, and lying during the course of the investigation.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

**Rule #10.** *Neglect of Duty.* Gross neglect of duty is any action or omission of action, which may be injurious to the member, fellow officers or the general public. A member may be immediately relieved of police responsibility for gross neglect of duty.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

 a. Association with known criminals;

 b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

 c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

**Rule #12.** *Truthfulness.* Personnel of the LaVergne Police Department shall speak the truth at all times and under all circumstances, whether under oath or not.

Patton recommends **Termination of Employment** for **McGowan** based on the violation of sections 3.4, 9.2, 9.3, 9.7, and 9.8 of the Employee Handbook regarding workplace violence, sexual harassment, conduct unbecoming of an officer, and lying during the course of the investigation. McGowan admitted to the workplace violence, while denying all other accusations. The investigation showed more likely than not that McGowan tried to intimidate Hall in denying any allegations against him in this case. McGowan also did meet with Powell, and was not fully truthful with HR about those conversations. McGowan, more likely than not, also had sexual relations with Hall. McGowan also lied during the investigation about sending nude images to Hall, and then, after asking HR to leave the room, confessed to sending the images. Patton found McGowan to be not credible during the course of the investigation. McGowan has previous confirmed allegations of sex with an employee from 2007 in the employment file.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.**  *Obedience to Rules, Regulations, Laws.*  All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.**  *Conduct.*  The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

    a.  Association with known criminals;

    b.  By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

    c.  By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

**Rule #12.**  *Truthfulness.*  Personnel of the LaVergne Police Department shall speak the truth at all times and under all circumstances, whether under oath or not.

Patton recommends **Termination of Employment** for **Powell** based on the violation of sections 3.4, 9.2, and 9.3 of the Employee Handbook regarding sexual activity while on duty, conduct unbecoming of an officer, and lying during the course of the investigation.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.**  *Obedience to Rules, Regulations, Laws.*  All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

**Rule #10.**  *Neglect of Duty.*  Gross neglect of duty is any action or omission of action, which may be injurious to the member, fellow officers or the general public.  A member may be immediately relieved of police responsibility for gross neglect of duty.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.**  *Conduct.*  The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

**Rule #12.**  *Truthfulness.*   Personnel of the LaVergne Police Department shall speak the truth at all times and under all circumstances, whether under oath or not.

Patton recommends **Termination of Employment** for **Shields** based on the violation of sections 3.4, 9.2, 9.7, and 9.3 of the Employee Handbook regarding sexual activity while on duty, sexual harassment, and conduct unbecoming of an officer.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

**Rule #10.** *Neglect of Duty.* Gross neglect of duty is any action or omission of action, which may be injurious to the member, fellow officers or the general public. A member may be immediately relieved of police responsibility for gross neglect of duty.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Patton recommends **Termination of Employment** for **Lugo** based on the violation of sections 3.4, 9.2, 9.3, and 9.7 of the Employee Handbook regarding sexual unreported intimate relationships, sexual harassment, lying during the course of the investigation, and conduct unbecoming of an officer.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.

- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

   a. Association with known criminals;

   b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

   c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

**Rule #12.** *Truthfulness.* Personnel of the LaVergne Police Department shall speak the truth at all times and under all circumstances, whether under oath or not.

Patton recommends **Suspension – 80 hours unpaid** (8 consecutive shifts) for **Magliocco** based on violations of sections 3.4, 9.2 and 9.3 of the Employee Handbook regarding unreported sexual activity / intimate relationship with a co-worker and sexual harassment. Magliocco will also be removed from second shift patrol and away from the officer group that was involved with this investigation.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the

employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department

Patton recommends **Suspension – 80 hours unpaid** (8 consecutive shifts) for **Holladay** based on violations of sections 3.4, 9.2 and 9.3 of the Employee Handbook regarding unreported sexual activity / intimate relationship with a co-worker and sexual harassment. Holladay will also be removed from second shift K-9 and away from the officer group that was involved with this investigation.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.** *Obedience to Rules, Regulations, Laws.* All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.** *Conduct.* The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Patton recommends **Suspension – 40 hours unpaid** (4 shifts) for **Schoeberl** based on violations of sections 9.2 and 9.3 of the Employee Handbook regarding unreported sexual harassment and conduct unbecoming of an officer. Schoeberl confessed to showing photos of his genitals to other female and male officers and requesting receiving sexual based video from Hall. Schoeberl will also be removed from second shift patrol and away from the officer group that was involved with this investigation.

**La Vergne Police Department General Order 300.01 Rules and Regulations:**

**Rule #2.**  *Obedience to Rules, Regulations, Laws.*  All personnel of the LaVergne Police Department are required to obey and enforce all:

- Federal, state and local ordinances.
- Rules, regulation and procedures contained in this manual.
- General and Special Orders.
- City of LaVergne Personnel Manual Rules and Regulations.
- All lawful orders issued by a superior officer whether written or oral.

Failure to obey or enforce any of the above shall subject that person to disciplinary action.

**Rule #11.**  *Conduct.*  The community expects that the integrity of its police be above reproach. Therefore, Employees of the LaVergne Police Department shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include any conduct that brings the Department into disrepute, causes the public to lose confidence in the Department, reflects discredit upon the employee as a member of the Department, or impairs the operations, morale or efficiency of the Department or officer to include but not limited to the following:

a. Association with known criminals;

b. By entering or remaining in establishments or residences where illegal activities are suspected or are being committed except as necessary to perform a police activity;

c. By any act of disorderly conduct including, but not limited to, fighting, alcohol consumption resulting in arrest, disturbance of the peace or other action that brings discredit to the member or the Department.

Hall, McGowan, Powell, and Lugo were placed on paid administrative leave pending the outcome of the investigation starting on 12/16/22. Shields was placed on paid administrative leave pending the outcome of the investigation starting on 12/27/22. Patton presented his findings to the City Attorney, Chief of Police, and City Administrator on 12/27/22 for review. **The City Attorney, Chief of Police, City Administrator, and Assistant City Administrator all aligned on the recommendations**. The recommendations were presented to the Mayor on 12/29/2022. The Mayor approved all recommendations for terminations and suspensions on 12/29/2022.