**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**


MAEGAN OLIVIA HALL,

     *Plaintiff*

v.                                           **3:23-cv-00173**

CITY OF LA VERGNE, TENNESSEE, et al.,        JURY DEMAND

                                          District Judge Richardson

     *Defendants*                        Magistrate Judge Holmes\

---

**LEWIS POWELL'S ANSWER AND COUNTERCOMPLAINT**

---


Defendant Lewis Powell hereby answers the lawsuit as follows:


*Maegan Hall was a vulnerable and optimistic 24-year-old woman who had applied to be a police officer in the City of La Vergne. Where Ms. Hall sought role models at her new job, she instead found predators. In place of offering professional development, her supervisors and the Chief of Police groomed her for sexual exploitation. They colluded in using their authority to systematically disarm her resistance and entrap her in degrading and abusive sexual relationships, even sharing tips on the best ways to manipulate and exploit her. Maegan Hall felt trapped in the role assigned to her at the City of La Vergne Police Department and, in an attempt to escape, she nearly killed herself. Then, the City blamed her for everything. This lawsuit seeks justice for Maegan Hall.*

    1.     DENIED.


*This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.*

    2.     ADMITTED that the Court has jurisdiction. DENIED that anyone violated Maegan Hall's rights in the ways that she alleges.

1

*Jurisdiction of this Court is invoked under 28 U.S.C. § 1434(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America and 15 U.S.C. § 6851.*

3.     DENIED that Plaintiff Hall is really seeking justice, but ADMITTED that the Court has jurisdiction under these sections.

*Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.*

4.     ADMITTED.

*Plaintiff asserts claims for relief under 15 U.S.C. § 6851 which authorizes actions to redress the nonconsensual sharing of intimate visual depictions through instrumentalities of interstate commerce.*

5.     DENIED.

*This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district and all defendants are residents of the State of Tennessee. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.*

6.     ADMITTED that venue is proper. Specific responses to the supposed "events or omissions" are shown in the other paragraphs.

### The Parties

*Plaintiff Maegan Hall is an adult resident of Tennessee and a former junior officer at the City of La Vergne Police Department ("LPD"). Ms. Hall may be contacted through undersigned counsel to this complaint.*

7.      ADMITTED.

*Defendant Burrel Chip Davis is an adult resident of Tennessee and was the Chief of Police at the LPD at all times relevant to this Complaint.*

8.      ADMITTED.

*Defendant Hentry "Ty" McGowan is an adult resident of Tennessee and was a Sergeant at the LPD.*

9.      ADMITTED.

*Defendant Lewis Powell is an adult resident of Tennessee and was a Sergeant at the LPD.*

10.      ADMITTED.

*Defendant City of La Vergne is a municipal government entity organized under the laws of the State of Tennessee and located in Rutherford County, Tennessee.*

11.      ADMITTED.

### Factual Allegations

*Plaintiff Maegan Hall is a woman and a graduate of Middle Tennessee State University with a bachelor's degree in Biology.*

12.      ADMITTED.

*In December 2020, Ms. Hall applied for a job with the LPD. She was 24 years old, 5'4"*
*tall, and weighed approximately 135 lbs.*

13.     ADMITTED.


*Part of the application process at LPD requires candidates to undergo a psychological*
*evaluation.*

14.     ADMITTED.


*Ms. Hall expressed concern about the psychological evaluation to Sgt. Ty McGowan*
*because Ms. Hall had a history of mental health problems including alcohol abuse, anxiety,*
*depression, and self-harm.*

15.     Defendant Lewis Powell LACKS SUFFICIENT INFORMATION to admit or
deny the allegation, and therefore denies it.


*Sgt. McGowan told Ms. Hall the specific questions that would be asked and instructed*
*her to lie about her history of mental health problems.*

16.     INSUFFICIENT INFORMATION to admit or deny.


*Ms. Hall was hired by the La Vergne Police Department on February 9, 2021.*

17.     ADMITTED.


*Ms. Hall was assigned to the second shift at LPD.*

18.     ADMITTED.

4

*Ms. Hall was the only woman assigned to that shift throughout her employment with LPD.*

19.    INSUFFICIENT INFORMATION to admit or deny.

*From the beginning of her employment, Ms. Hall experienced a workplace environment permeated with sexual innuendo and sexually explicit behavior, including but not limited to . . . .*

20.    INSUFFICIENT INFORMATION to admit or deny.

*During her employment, Ms. Hal was groomed to engage in sexually exploitative activities by men in the department including Sgt. Powell, Sgt. McGowan, and Chief Davis.*

21.    DENIED.

*Sexual activity between a subordinate and superior within a bureaucratic hierarchy of authority should be examined as a potential abuse of authority.*

22.    DENIED.

*A superior officer in a bureaucratic hierarchy commits an abuse of authority by using the power of their office to pursue a sexual relationship with a subordinate, which is not a legitimate objective within the bureaucratic sphere.*

23.    DENIED.

"Sexual grooming" is the process of deliberately establishing a connection with an individual in order to prepare that person for sexual exploitation and/or abuse."

24.    DENIED.

Dr. Grant Sinnamon's model outlines seven stages of the grooming process[.]

25.     ADMITTED only that he defines and models the term this way.

*During Ms. Hall's employment at the LPD, Sgt. Lewis Powell was one of her supervisors.*

26.     DENIED — except that it is ADMITTED that on rare occasions, Powell would serve as a substitute supervisor, should Hall's supervisor be unable to attend work. In such capacity, however, he had no power to promote her as Hall alleges in this lawsuit.

*Sgt. Powell is more than fifteen (15) years older than Ms. Hall.*

27.     ADMITTED.

*Sgt. Powell's height is 6'2".*

28.     ADMITTED.

*Sgt. Powell weighed approximately 220 lbs at all times referenced within this Complaint.*

29.     ADMITTED.

*Sgt. Powell identified Ms. Hall as a young, vulnerable woman in a department dominated by aggressive older men.*

30.     DENIED.

*Sgt. Powell used his position as second shift supervisor to befriend Ms. Hall and learned about Ms. Hall's desire to become a Crime Suppression Unit ("CSU") officer.*

6

31. DENIED.

*In early March 2022, Sgt. Powell targeted Ms. Hall for sexual exploitation by abusing his knowledge of her personal circumstances, professional aspirations, and psychological vulnerabilities to coerce her into sexual activity.*

32. DENIED.

*Sgt. Powell learned that Ms. Hall was going through the process of buying a home with her husband and that this process was extremely taxing on their relationship.*

33. DENIED.

*Sgt. Powell positioned himself as a reliable source of companionship and advise regarding Ms. Hall's career and her marriage.*

34. DENIED.

*Sgt. Powell contacted Ms. Hall through Facebook Messenger and offered his personal cell phone number.*

35. ADMITTED.

*Sgt. Powell complimented Ms. Hall's physique and offered to show her workout techniques.*

36. DENIED.

*Leveraging his role with the Crime Suppression Unit and his rank, Sgt. Powell promised to share with Ms. Hall training and "tips" in order to ensure advancement in her career.*

37.     ADMITTED that he provided some training and teaching. DENIED that he promised advancement.

*On or around March 15, 2022, Sgt. Powell would bring up the topic of sex while he was on patrol with Officer Hall. He stated that he had "played the game before" and "could keep it cool at work."*

38.     DENIED.

*During one such conversation, Sgt. Powell directly propositioned Ms. Hall for the first time. He stated that "it's just sex, I can give you what your husband can't give you." Ms. Hall responded that she was not interested.*

39.     DENIED.

*Sgt. Powell persisted in requests for sex despite Ms. Hall's resistance.*

40.     DENIED.

*Sgt. Powell stated that he was "taking an interest in Ms. Hall," and that Ms Hall reminded him of himself when he first started at the department.*

41.     DENIED.

*Ms. Hall looked up to Sgt. Powell as a professional role model and an authority figure within the department who had the ability to make or break her career.*

42.     INSUFFICIENT INFORMATION to admit or deny.

*Despite Ms. Hall's repeated denials, Sgt. Powell texted Ms. Hall during shift about how they could have a secret sexual relationship.*

8

43.   DENIED.


*Eventually, Ms. Hall gave in to Sgt. Powell's requests for sexual favors.*

44.   DENIED.


*Sgt. Powell told Ms. Hall to come in early for jujitsu training at an off-site facility used by the department for such purposes.*

45.   ADMITTED.


*When Ms. Hall arrived, Sgt. Powell kissed Ms. Hall. He then pressured her to perform oral sex. Ms. Hall expressed concern about the fact that they were engaging in this activity in a public place but reluctantly agreed. Ms. Hall explicitly stated that she did not want Sgt. Powell to ejaculate in her mouth. Despite her expressed limitation, Sgt. Powell forcibly held Ms. Hall's head down and ejaculated in her mouth.*

46.   DENIED.


*Within days of the "jujitsu training," Sgt. Powell took Ms. Hall in his truck after shift for a sexual encounter. She expressed a boundary by requiring the use of a condom and Sgt. Powell agreed not to ejaculate inside her vagina. However, during sex, Sgt. Powell removed the condom, forcibly held Ms. Hall in place, and ejaculated inside Ms. Hall's vagina. He said that it was "okay" because he had a vasectomy.*

47.   DENIED.


*On another occasion, while engaged in sexual activity, Ms. Hall noticed that Sgt. Powell was photographing or video recording her without her consent. She became upset and demanded that Sgt. Powell delete the data.*

48.   DENIED.


9

*Sgt. Powell assured her that he deleted data, but based on the February 6, 2023 Investigative Report by Frost Brown Todd LLP (Ex. B — Independent Investigation Report), at least one of these non-consensual intimate visual depictions ended up in the possession of Sgt. McGowan and Chief Davis.*

49.    DENIED.

*Sgt. Powell regularly instructed Ms. Hall to delete text messages evincing the relationship.*

50.    DENIED.

*Sgt. Powell persistently asked for sex during shift and whenever the two were alone together at LPD.*

51.    DENIED.

*Sgt. Powell would engage in sexually charged communications involving explicit descriptions of sex acts.*

52.    DENIED.

*On several occasions between March 2022 and October 2022, when Ms. Hall would make a mistake on duty, Sgt. Powell excused her mistakes on the condition that she perform sex acts with him later.*

53.    DENIED.

*Sgt. Powell threatened that "if anyone finds out or if you sleep with anyone else then it's over, things are going to be different, work's going to be different."*

54.    DENIED.

10

*Sgt. Powell used his authority as supervisor to seclude Ms. Hall and coerce her into performing sex acts. On one such occasion, Sgt. Powell secluded Ms. Hall at a police substation and asked her to perform oral sex. Ms. Hall declined, but Sgt. Powell would not take "no" for an answer. He begged Ms. Hall to perform oral sex, stating that he had "blue balls" and really needed it. Ms. Hall felt that she had no choice but to continue to provide sexual favors to Sgt. Powell, so she performed oral sex as demanded.*

55.     DENIED.


*The exploitative sexual relationship with Sgt. Powell impacted Ms. Hall's mental health and contributed to worsening of her psychiatric symptoms including anxiety and depression.*

56.     DENIED.


*Ms. Hall felt that she couldn't get out of the relationship because Sgt. Powell refused to accept her wishes whenever she told him that she did not want to have sex with him or when she tried to end the relationship.*

57.     DENIED.


*On one occasion, when Ms. Hall tried to end the relationship, Sgt. Powell called her while heavily intoxicated. Sgt. Powell was crying and told Ms. Hall he drank an entire bottle of Jack Daniel's whiskey. He threatened to kill himself, told Ms. Hall "you did this to me," and asserted that Ms. Hall was responsible for his imminent suicide.*

58.     DENIED.


*Ms. Hall continued to experience anxiety, depression, and difficulty in concentrating at work because of her inability to escape the relationship with Sgt. Powell.*

59.     DENIED.

*On Memorial Day Weekend 2022 Ms. Hall attended a party hosted by LPD Sgt. Eric Staats and attended by other LPD officers.*

60.    ADMITTED.

*The only other woman at this party was Officer Magiocco's wife, who left early in the evening.*

61.    INSUFFICIENT INFORMATION to admit or deny.

*Ms. Hall posted on Facebook a picture of herself in a bathing suit, lying on the houseboat.*

62.    ADMITTED.

*LPD Sgt. William Watson commented on Ms. Hall's Facebook post.*

63.    INSUFFICIENT INFORMATION to admit or deny.

*Ms. Hall and Officer Magliocco walked his wife back to her car, then secluded themselves and had sex before returning to the houseboat.*

64.    INSUFFICIENT INFORMATION to admit or deny.

*When they returned, Officer Magliocco digitally penetrated the visibly intoxicated Ms. Hall in a hot tub within full view of the other LPD officers.*

65.    INSUFFICIENT INFORMATION to admit or deny.

*After several minutes of digital penetration, Ms. Hall pushed away Officer Magliocco's hand from her crotch and said "no."*

66.     INSUFFICIENT INFORMATION to admit or deny.

*Ten or twenty minutes later, Officer Magliocco poured vodka down Ms. Hall's throat.*

67.     ADMITTED, on information and belief, that Magliocco poured vodka down her throat at the party.

*Afterward, Ms. Hall and Officer Magliocco had sexual intercourse in the bathroom of the houseboat.*

68.     INSUFFICIENT INFORMATION to admit or deny.

*The events occurring at Sgt. Staats' party became widely known within the LPD.*

69.     ADMITTED that at least some events at the party became widely known. Defendant Powell LACKS SUFFICIENT INFORMATION as to what all events took place at the party.

*Sgt. Powell told Ms. Hall such flagrant sexual activity could lead to trouble.*

70.     ADMITTED.

*Sgt. Powell continued to leverage his position of authority to extract compliance with his sexual demands from Ms. Hall.*

71.     DENIED.

*Sgt. Powell texted Ms. Hall under the pretense of offering additional "training opportunities," and Ms. Hall would make excuses to avoid participating.*

72.     DENIED.

*Sgt. Powell did not accept Ms. Hall's rejection. He told Ms. Hall "you owe me." Ms. Hall submitted to further sexual acts with Sgt. Powell through October 2022.*

73.    DENIED.

*Sgt. Powell secluded Ms. Hall during shift at an archery range and stuck his hand down the front of her pants.*

74.    DENIED.

*Sgt. Powell provided Ms. Hall with special treatment at work and made sure she knew that he "wouldn't be doing this" if they didn't have a sexual relationship.*

75.    INSUFFICIENT INFORMATION, as the paragraph is too vague to admit or deny, and hence it is denied.

*Sgt. Powell coerced Ms. Hall to engage in sex acts despite her rejection and non-consent. After violating Ms. Hall, Sgt. Powell said things like, "I could tell you really weren't into that. You must really care about me, thank you for letting me finish. It shows you really care about me."*

76.    DENIED.

*When Sgt. Powell wanted sex, he refused to take "no" for an answer. He continued demanding sex, saying things like, "We'll do it tomorrow," or, "I've done so much for you, I've helped you," and, "I've done so much for you in your personal life."*

77.    DENIED.

*The sexually coerced environment on the second shift at the La Vergne Police Department triggered increasingly severe symptoms of mental illness in Ms. Hall.*

14

78.    DENIED.


*These symptoms impacted Ms. Hall's ability to perform her job by impairing her ability to concentrate on tasks such as driving.*

79.    INSUFFICIENT INFORMATION to admit or deny Hall's symptoms or their effects.


*On July 14, 2022, Ms. Hall reached out to Sgt. Powell to convey her psychological distress and its impact on her ability to perform her duties.*

80.    DENIED.


*Sgt. Powell told Ms. Hall that, if she sought hep for her psychological distress, she would be portrayed as the "weak female officer" and no one would trust her. He warned her against reporting her issues and advised her to "suck it up" and focus on work.*

81.    DENIED.


*Within hours after the call to Sgt. Powell, Ms. Hall was involved in an on-duty collision. Ms. Hall was operating her patrol vehicle on Waldron Road at the Murfreesboro Road intersection. She attempted to merge lanes but failed to yield to another vehicle causing a collision and property damage to both vehicles.*

82.    The call is DENIED. The crash is ADMITTED.


*On October 21, 2022, Ms. Hall was involved in another collision while on duty. She was leaving the La Vergne police station to respond to an assault, but pulled out in front of a van and caused a wreck. She was injured and transported to Stonecrest Medical Center for treatment.*

83.    ADMITTED.

***Sexual Grooming by Sgt. Henry "Ty" McGowan***

*Sgt. McGowan was a supervisor at the LPD during Ms. Hall's employment.*

84.    DENIED.


*Sgt. McGowan is more than twenty (20) years older than Ms. Hall.*

85.    ADMITTED.


*Sgt. McGowan is 6'01" tall.*

86.    ADMITTED.


*Sgt. McGowan weighed over 240 lbs at all times relevant to this complaint.*

87.    ADMITTED.


*During her employment with LPD and within the workplace environment, Sgt. McGowan continuously engaged in sexually charged behavior, including but not limited to[. . . .]*

88.    INSUFFICIENT INFORMATION to admit or deny.


*Between February 2021 and October 2022, Ms. Hall repeatedly declined to participate in sexual activity with Sgt. McGowan.*

89.    INSUFFICIENT INFORMATION to admit or deny.


*Despite Ms Hall's repeated rejections of Sgt. McGowan's sexual advances, Sgt. McGowan continued to request such favors.*

90.    INSUFFICIENT INFORMATION to admit or deny.

*In early November 2022, Ms. Hall reached out to Sgt. McGowan for guidance about how to deal with the psychological distress she was experiencing resulting from her circumstances at LPD. Sgt. McGowan offered to meet with her at his house.*

91.    INSUFFICIENT INFORMATION to admit or deny.

*Sgt. McGowan promised that he could protect Ms. Hall's position in the department. He mentioned that her on-duty auto collisions could prevent her from getting promoted, but that he had the power to ensure Ms. Hall got the promotion. Contemporaneously with these promises, Sgt. McGowan propositioned Ms. Hall for sexual intercourse. Ms. Hall agreed.*

92.    INSUFFICIENT INFORMATION to admit or deny.

*Ms. Hall's mental condition continued to deteriorate between November and Decembet 2022.*

93.    ADMITTED.

### Attempted Sexual Grooming by Chief Burrel "Chip" Davis

*At the time Ms. Hall joined the LPD, Chief Davis was the highest-ranking commanding officer of the department.*

94.    INSUFFICIENT INFORMATION to admit or deny.

*Chief Davis is more than twenty (20) years older than Ms. Hall.*

95.    ADMITTED.

*Chief Davis and other supervisors at the LPD including McGowan and Powell used promises of promotions, favorable treatment, and special training as tools to coerce and*

17

*manipulate junior female officers including Ms. Hall into performing sex acts on and providing intimate visual depictions to said supervisors.*

96.     DENIED.

*Chief Davis encouraged this behavior and shared in the pornography and sexual fantasy of mutually abusing Ms. Hall with his trusted supervisor Ty McGowan[.]*

97.     ADMITTED that McGowan and Chief Davis shared pornography and fantasized about Plaintiff Hall. DENIED that they fantasized about "abusing" her.

*As demonstrated in his October 28, 2022 text exchange, Chief Davis became frustrated by his comparative failure to groom Ms. Hall for sexual exploitation.*

98.     INSUFFICIENT information to admit or deny.

*Chief Davis repeatedly attempted to seclude Ms. Hall so that he could use the authority of his high office — or as he described it, "normal pimp shit," to induce Ms. Hall to gratify his own sexual desires.*

99.     INSUFFICIENT information to admit or deny.

*Chief Burrel Davis explicitly and implicitly engaged in sexually charged behavior permeating the workplace at LPD, including but not limited to[. . . .]*

100.     ADMITTED that Chief Davis engaged in at least some sexually charged behavior, but Defendant Powell LACKS SUFFICIENT INFORMATION to admit or deny all the alleged particulars. Defendant Powell does ADMIT that Hall would dance for the Chief, and that the Chief once referred to her clothing as "hot girl summer shit."

### *The Conspiracy to Exploit Junior Female Officers of the La Vergne Police Department*

*Defendants Powell, McGowan, Davis, and unnamed third parties agreed to use their positions of authority within the La Vergne City Police Department to groom junior female*

18

*officers including Ms. Hall into acting as sex objects (who accept without overt resistance unwanted sexual advances) within the workplace, performing sex acts in response to promises of favorable treatment and/or threats of unfavorable treatment and termination, and providing intimate visual depictions within the meaning of 15 U.S.C. § 6851.*

101.   DENIED.

*Defendants Powell, McGowan, Davis, and unnamed third parties agreed to ignore the written policies in place governing workplace relationships promulgated by the City of La Vergne in order to facilitate the grooming of female officers into performing sex acts and providing these Defendants with intimate visual depictions.*

102.   DENIED.

*Defendants Powell, McGowan, and Davis and unnamed third parties maintained a custom within the LPD of permitting supervisors to use promises of promotions, favorable treatment, and special training as tools to coerce and manipulate junior female officers including Ms. Hall into performing sex acts on and providing visual depictions to said supervisors.*

103.   DENIED.

*Defendants Powell, McGowan, and Davis and unnamed third parties maintained a custom within the LPD of permitting supervisors to seclude and threaten junior female officers with demotion or termination in order to silence them from reporting sexual harassment or abuse.*

104.   DENIED.

*Defendants Powell, McGowan, Davis, and unnamed third parties agreed to share information with one another concerning successful grooming measures employed against female junior officers which resulted in sex acts or the production of intimate visual depictions in order to enhance their proficiency in exploitation of these women, or as they described it, "pimping."*

105.   DENIED.

19

*Chief Davis acted as the leader of the agreement to sexually exploit female junior officers at the LPD.*

106.    INSUFFICIENT INFORMATION to admit or deny.

*Sgt. McGowan acted as Chief Davis's second-in-command in the agreement to sexually exploit female junior officers at the LPD by conveying information and intimate visual depictions between Davis and other participants.*

107.    INSUFFICIENT INFORMATION to admit or deny.

*In furtherance of the agreement to sexually exploit junior female officers at the LPD, Sgt. McGowan shared Ms. Hall's psychological vulnerabilities with Sgt. Powell and Chief Davis in order to enhance their ability to victimize Ms. Hall.*

108.    DENIED.

*In furtherance of the agreement to sexually exploit female junior officers at the LPD, Defendant Powell exploited Ms. Hall's psychological vulnerabilities and abused his position of authority at the LPD by offering training in exchange for submission to his sexual demands, offering advancement in Ms. Hall's career in exchange for submission to sexual demands, trading sex acts for overlooking on-the-job mistakes, and threatening to make Ms. Hall's conditions of employment more difficult if she did not continue to participate in sex acts with him.*

109.    DENIED.

*Defendant McGowan groomed Ms. Hall as described* supra *in furtherance of the agreement to sexually exploit junior female officers at the LPD.*

110.    DENIED.

20

*Defendant Powell groomed Ms. Hall as described* supra *in furtherance of the agreement to sexually exploit junior female officers at the LPD.*

111.    DENIED.

*Chief Davis attempted to groom Ms. Hall as described* supra *in furtherance of the agreement to sexually exploit junior female officers at the LPD.*

112.    DENIED.

*Defendant Powell also captured intimate visual depictions of Ms. Hall without her knowledge during sex and, upon Ms. Hall's discovery, told her he deleted the intimate visual depictions.*

113.    DENIED.

*On and after October 1, 2022, Defendant Powell disseminated Ms. Hall's intimate visual depictions to third parties including Defendant McGowan by use of a cell phone connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.*

114.    DENIED.

*In furtherance of the agreement to sexually exploit junior female officers at the LPD, Chief Davis maintained a "secret" phone that he referred to as "Ole Boy."*

115.    ADMITTED that he had the phone, but DENIED that there was an agreement.

*"Ole Boy" is a cell phone connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.*

116.    ADMITTED.

*On or about October 31, 2022, Chief Davis used "Ole Boy" to solicit intimate visual depictions of Ms. Hall from Sgt. McGowan in furtherance of the agreement to sexually exploit junior female officers at the LPD.*

117.    DENIED.


*On October 31, 2022, Defendant McGowan used a cell phone connected to the internet and telecommunications networks capable of transmitting and receiving data by electronic means to Ms. Hall's intimate visual depictions to Chief Davis.*

118.    INSUFFICIENT INFORMATION to admit or deny.


*On December 1, 2022, Defendant McGowan used a cell phone connected to the internet and telecommunications networks capable of transmitting and receiving data by electronic means to disseminate Ms. Hall's intimate visual depictions to Chief Davis[.]*

119.    INSUFFICIENT INFORMATION to admit or deny.


*Ms. Hall did not provide intimate visual depictions to Defendant Powell or Defendant McGowan as an affirmative, conscious, and voluntary decision free from force, fraud, misrepresentation, and coercion.*

120.    ADMITTED that Hall provided some pornography to Powell, McGowan, and many others. DENIED that Hall was coerced or tricked into sending the images to anyone. She did it freely and voluntarily.

DENIED that any of what she provided to Powell qualified as "intimate visual depictions."

INSUFFICIENT INFORMATION as to what specifically she provided to McGowan or the other officers.


*Ms. Hall never provided intimate visual depictions to Chief Davis, nor did she consent for any other person to provide such images to Chief Davis.*

121.    INSUFFICIENT INFORMATION to admit or deny.


*On December 8, 2022, Ms. Hall's mental health deteriorated to such a degree that she became suicidal.*

122.    INSUFFICIENT INFORMATION to admit or deny.


*On December 8, 2022, Ms. Hall began to cut herself in an effort to "work herself up" to the ultimate act of taking her own life.*

123.    INSUFFICIENT INFORMATION to admit or deny.


*On December 8, 2022, Ms. Hall was committed for psychiatric treatment at St. Thomas Ascension for 72 hours where she received treatment for bipolar disorder.*

124.    ADMITTED.


*Upon information and belief, Sgt. McGowan feared that Ms. Hall disclosed to her medical providers details concerning the sexual exploitation he inflicted upon her. This fear motivated Sgt. McGowan to cause a report regarding Ms. Hall's sexual interactions with other officers to be presented to La Vergne Mayor Jason Cole.*

125.    INSUFFICIENT INFORMATION to admit or deny.


*Mayor Jason Cole, acting on the information provided to him from Sgt. McGowan's cell phone, contacted Director of Human Resources Andrew Patton and reported that "Officer Maegan Hall was having intimate relationships with other members of the La Vergne Police Department."*

126.    Unknown who the source of the tip was, but otherwise ADMITTED.


23

*The City of La Vergne's Human Resources director Andrew Patton received this information, conveyed it to Chief Davis, and commenced an investigation based on the allegations.*

127.   ADMITTED.

*Immediately after the investigation began, Chief Davis and Sgt. McGowan agreed to share confidential information gained by Chief Davis through exercise of his official authority as the ultimate policymaker at the LPD in order to thwart discovery of the agreement to sexually exploit junior female officers of the LPD.*

128.   DENIED.

*Sgt. McGowan agreed with Chief Davis to cast Ms. Hall's sexual activity in a false light by asserting that Ms. Hall was the enthusiastic perpetrator of sexual misconduct.*

129.   DENIED that such characterization of her behavior is false. INSUFFICIENT INFORMATION as to whether they actually agreed to characterize it that way.

*Beginning on or around December 12, 2022, Chief Davis and Andrew Patton jointly conducted the initial investigation into sexual misconduct allegations at the LPD.*

130.   ADMITTED.

*Throughout the December 2022 investigation, Sgt. McGowan communicated with Chief Davis using "Ole Boy" in order to subvert the course of the investigation and prevent the detection of the agreement to sexually exploit junior female officers at the LPD.*

131.   INSUFFICIENT INFORMATION to admit or deny.

*During the December 2022 investigation, following Defendant Powell's admissions of wrongdoing and allegations against other participants in the agreement to sexually exploit junior female officers at the LPD, Chief Davis used "Ole Boy" to communicate with Defendant McGowan and alert him to Powell's statements.*

24

132.    INSUFFICIENT INFORMATION to admit or deny whether Chief Davis alerted McGowan to Powell's statements. DENIED that Powell confessed to exploiting anyone or agreeing to do so.

*During the December 2022 investigation, Defendant Powell explicitly directed Ms. Hall to lie about the sexual activities at issue in the investigation.*

133.    DENIED.

*During the course of the December 2022 investigation, Sgt. McGown sought to physically intimidate an employee in the human resources department by placing his hands around her neck.*

134.    INSUFFICIENT INFORMATION to admit or deny.

*During the investigation led by Chief Davis, who had been actively engaged in the campaign of sexual coercion and harassment, Ms. Hall was afraid to disclose details concerning the sexual exploitation inflicted against her.*

135.    DENIED.

*Sgt. Powell and Sgt. McGowan explicitly and implicitly conveyed to Ms. Hall that she would be in trouble if anyone found out about her work-related sexual activities.*

136.    DENIED.

*Ms. Hall ultimately disclosed to Patton and Chief David that she was afraid of Sgt. Powell; that Powell was aggressive and coerced her into performing sex acts; and that she was afraid of what Powell would do if she admitted to the relationship.*

137.    DENIED that she claimed that he had coerced her or was "aggressive." She claimed that he was "persistent." ADMITTED that she also claimed to be afraid of what he might do.

*Chief Davis and Sgt. McGowan surreptitiously colluded with one another in an attempt to influence the outcome of the investigation in ways including but not limited to . . . .*

138.    DENIED that Hall was a victim. INSUFFICIENT INFORMATION to admit or deny the rest.

*The Initial LPD Report (Ex. E) framed all of the sexual activity as being perpetrated or initiated by Ms. Hall[.]*

139.    DENIED that it framed all the activity in this way, because it also alleged that some male officers engaged in "Sexual Harassment."

*Ms. Hall was terminated based on the initial LPD Report which intentionally omitted her specific and detailed allegations of sexual abuse and harassment by Sgt. Powell.*

140.    ADMITTED that she was terminated after the report's release. DENIED that the report intentionally lied about her.

*Based on the deliberately misleading Initial LPD Report, Ms. Hall gained unwanted international notoriety as the "girls gone wild" female officer.*

141.    ADMITTED that she gained notoriety. The rest is DENIED.

*Media coverage ran with the exploitative and false "girls gone wild" narrative promoted in the Initial LPD Report.*

142.    ADMITTED that the media ran with the narrative. DENIED that the narrative was false.

*Ms. Hall's face became the "Female Cop" meme widely circulated throughout the internet.*

143.     ADMITTED.


*Entire forums have emerged where users swap memes and sexual fantasies about Ms. Hall.*

144.     ADMITTED that the forums swap memes. INSUFFICIENT INFORMATION as to whether they swap fantasies.


*Reddit hosts the "r/maeganhallcop" subreddit which is dedicated to Maegan Hall memes and photoshopped pornography.*

145.     ADMITTED that there is a subreddit. INSUFFICIENT INFORMATION to admit or deny its specific content.


*Reddit, TikTok, Facebook, Instagram, and other social media site users generated thousands of "Female Cop" members with millions of views.*

146.     ADMITTED.


*Since her involuntary christening as the "girls gone wild cop," Ms. Hall has been stalked and harassed by strangers from the internet and paparazzi.*

147.     INSUFFICIENT INFORMATION to admit or deny.


*Immediately following her termination from employment with the LPD, Ms. Hall obtained employment at a local restaurant.*

148.     INSUFFICIENT INFORMATION to admit or deny.


*Shortly thereafter, the restaurant terminated her based upon the extreme degree of publicity and paparazzi attention arising from the misleading Initial LPD Report.*

149.    DENIED.


*But for the sexual grooming and abuse perpetrated by the City of La Vergne, Sgt. McGowan, Sgt. Powell, and Chief Davis, Ms. Hall would not have been subjected to this extraordinary degree of public ridicule and shaming.*

150.    DENIED.


*Another result of the Initial LPD Report was the termination of Sgt. McGowan because, among other things, he grabbed the throat of an HR employee as an act of physical intimidation. Even Chief Davis could not save his job under those circumstances.*

151.    ADMITTED that the report makes this claim. INSUFFICIENT INFORMATION as to whether the claim is true, or whether the Chief wanted to save McGowan.


*Sgt. McGowan (or someone else with access to Sgt. McGowan's cell phone messages to "Ole Boy") decided to condemn Chief Davis to the same fate by revealing enough of their mutually sexually exploitative behaior to ensure Chief Davis's termination.*

152.    INSUFFICIENT INFORMATION to admit or deny.


*Sgt. McGowan (or someone else with access to Sgt. McGowan's cell phone messages to "Ole Boy") again contacted Mayor Jason Cole with additional evidence on or around January 6, 2022.*

153.    INSUFFICIENT INFORMATION to admit or deny.


*Mayor Jason Cole shared this evidence with the La Vergne City Administrator Bruce Richardson.*

154.    INSUFFICIENT INFORMATION to admit or deny.

28

*Administrator Richardson commissioned an independent investigation by Frost Brown Todd LLP.*

155.    INSUFFICIENT INFORMATION to admit or deny.


*Thomas H. Lee, Esq., conducted the independent investigation for Frost Brown Todd, LLP.*

156.    ADMITTED.


*Mr. Lee's investigation involved confronting Chief Davis with printouts of his own messages with Sgt. McGowan.*

157.    ADMITTED.


*Mr. Lee found that Chief Davis received nude photos and videos of Ms. Hall and other female officers at the LPD. He concluded that "the volume of pornographic material passing through the Chief's personal phones should have put any reasonable supervisor on notice that the risk of a sexually hostile work environment in the Department was unacceptably high." Ex. B — Independent Investigative Report.*


158.    DENIED that they found nude videos of female officers besides Hall. The rest is ADMITTED.


*The ultimate findings of that report were released on February 6, 2023.*

159.    ADMITTED.


*Chief Davis was terminated on February 6, 2023.*

160.    ADMITTED.

*In the words of Mayor Jason Cole, the "culture" at the LPD "uncovered in these investigations is not acceptable."*

161.   ADMITTED.

*Ms. Hall continues to be pilloried by local, national, and international media as a result of the Defendants' conspiracy to sexually groom and exploit her, culminating in the misleading Initial LPD Report.*

162.   DENIED.

<u>*CAUSES OF ACTION*</u>

**COUNT 1: 42 U.SC. § 1983 — QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF THE RIGHT TO EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

*(All Defendants)*

*Ms. Hall incorporates Paragraphs 7 through 162 into this Count as is restated fully herein verbatim.*

163.   Defendant Powell also incorporates his responses to said paragraphs.

*Ms. Hall is a woman.*

164.   ADMITTED.

*Ms. Hall was targeted by Sgt. Powell as described* supra *based on her sex.*

165.   DENIED.

30

*Sgt. Powell's repeated sexual advances and requests for sexual favors were unwelcome based on Ms. Hall's repeated rejections and expressions of discomfort prior to engaging in the first instance of sexual contact in March 2022.*

166.   DENIED.

*Ms. Hall attempted on at least three occasions to terminate sexual contact with Sgt. Powell, but Sgt. Powell used the threats and promises described* supra *in order to coerce Ms. Hall into continuing to provide him with sexual favors and intimate visual depictions.*

167.   DENIED.

*Sgt. Powell explicitly and implicitly conditioned Ms. Hall's advancement within the LPD to the favorable assignment within the Crime Suppression Unit upon submission to Sgt. Powell's sexual demands.*

168.   DENIED.

*Sgt. Powell offered special training and special treatment in exchange for continued compliance with his sexual demands.*

169.   DENIED.

*Sgt. McGowan's sexual advances and requests for sexual favors described* supra *were unwelcome based on Ms. Hall's repeated rejections and expressions of discomfort prior to the November 2022 sexual encounter.*

170.   INSUFFICIENT INFORMATION to admit or deny.

*Sgt. McGowan's November 2022 explicit promise to ensure Ms. Hall's promotion in spite of her on-duty automobile collisions constitutes a condition for receiving job benefits.*

171.   INSUFFICIENT INFORMATION to admit or deny.

31

*Chief Davis is liable as a supervisor for the actions of Sgt. McGowan and Sgt. Powell because he condoned, facilitated, encouraged, and participated in the sexual exploitation of junior female officers including Ms. Hall.*

172.    DENIED.


*Defendants McGowan and Davis are independently liable under a "failure to intervene" theory[.]*

173.    DENIED.


*The City of La Vergne is liable as a municipality for the actions of Sgt. Powell, Sgt. McGowan, and Chief Davis[.]*

174.    DENIED.


*Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and power of their positions to engage in non-consensual sexual behavior with Ms. Hall thereby violating her rights and using their position to further their own personal interests.*

175.    DENIED.


### COUNT 2: 42 U.S.C. § 1983 — HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE RIGHT TO EQUAL PROTECTION AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

*(All Defendants)*


*Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.*

176.    Defendant Powell incorporates his responses to said paragraphs.

*Ms. Hall is a woman.*

177.   ADMITTED.


*Ms. Hall was subjected to unwelcome harassment by Defendants McGowan, Powell, and Davis as described* supra.

178.   DENIED.


*Defendants McGowan, Powell, and Davis personally targeted Ms. Hall for grooming and harassment based on her sex and did not target male officers for grooming or harassment.*

179.   DENIED.


*The conduct of Defendants McGowan, Powell, and Davis described* supra *was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.*

180.   DENIED.


The City of La Vergne is liable as a municipality for the sexually hostile work environment[.]

181.   DENIED.


*Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and power of their positions to engage in non-consensual sexual behavior with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.*

182.   DENIED.

33

*COUNT 3:  42 U.S.C. § 1983 — VIOLATION OF THE RIGHT TO BODILY INTEGRITY GUARANTEED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION*

*(All Defendants)*

*Ms. Hall incorporates Paragraphs 7 through 62 into this Count as if restated fully herein verbatim.*

183.    Defendant Powell incorporates his responses to said paragraphs.

*Defendants Powell and McGowan psychologically coerced Ms. Hall into engaging in physical sex acts as described* supra.

184.    DENIED.

*Defendant Davis attempted to psychologically coerce Ms. Hall as described* supra.

185.    INSUFFICIENT INFORMATION to admit or deny.

*Defendant Powell, under his authority as her supervisor at the LPD, physically coerced Ms. Hall between March 2022 and October 2022[.]*

186.    DENIED that he did these things, and also DENIED that he was her supervisor.

*The conduct of Defendants McGowan, Davis, and Powell whereby they sexually groomed and exploited Ms. Hall described* supra *shocks the conscience.*

187.    DENIED.

34

*Defendants McGowan and Davis are independently liable under a "failure to intervene" theory[.]*

188.    DENIED.


*Defendants McGowan Powell, and Davis acted under color of law by abusing the authority and the power of their positions to engage in grooming, sexual abuse, and non-consensual sexual behaviors with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.*

189.    DENIED.


*The City of La Vergne is liable as a municipality for the violations of Ms. Hall's Due Process Right to Bodily Integrity[.]*

190.    DENIED.


### COUNT 4:  VIOLATION OF 15 U.S.C. § 6851 — VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT

*(Defendants Powell and McGowan)*


*Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.*

191.    Defendant Powell incorporates his responses to said paragraphs.


*On October 31, 2022, Defendants Powell and McGowan transmitted intimate visual depictions of Ms. Hall without her consent as described* supra *and as outlined in Ex. B — Independent Investigative Report[.]*

192.    DENIED.


35

*On December 1, 2022, Defendant McGowan transmitted an intimate visual depiction of Ms. Hall without her consent as described* supra *and as outlined in Ex. B — Independent Investigative Report[.]*

193.    INSUFFICIENT INFORMATION to admit or deny.

*Defendants Powell and McGowan transmitted these intimate visual depictions of Ms. Hall using cell phones connected to internet and telecommunications networks capable of transmitting and receiving data by electronic means.*

194.    DENIED.

*Therefore, Defendants Powell and McGowan are each liable for liquidated damages pursuant to 15 U.S.C. § 6851.*

195.    DENIED.

### COUNT 5:  42 U.S.C. § 1983
### CONSPIRACY TO VIOLATE 15 U.S.C. § 6851, PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS, AND FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS

*(All Defendants)*

*Ms. Hall incorporates Paragraphs 7 through 162 into this Count as if restated fully herein verbatim.*

196.    Defendant Powell incorporates his responses to said paragraphs.

*As described* supra*, Defendants Powell, McGowan, and Davis entered into an agreement to use the authority and power of their offices within the LPD to sexually exploit junior female officers including Ms. Hall.*

197.    DENIED.

*As described* supra, *Defendants Powell, McGowan, and Davis shared the general objective to sexually exploit (as, as they describe it, "pimp") Ms. Hall in violation of her federally protected rights to subtantive due process, equal protection, and the statutory rights guaranteed by 15 U.S.C. § 6851.*

198.   DENIED.

*As described* supra, *each of the Defendants took overt acts in furtherance of the conspiracy[.]*

199.   DENIED.

*As a direct and proximate result of the conspiracy, Ms. Hall was deprived of her federally protected rights to equal protection, bodily integrity, and the rights afforded her by 15 U.S.C. § 6851.*

200.   DENIED.

*As a direct and proximate result of the conspiracy, Ms. Hall suffered not only the abuse and deprivations of her federally protected constitutional and statutory rights, but also public humiliation and castigation on an international scale.*

201.   DENIED.

*Defendants McGowan, Powell, and Davis acted under color of law by abusing the authority and power of their positions to engage in grooming, sexual abuse, and non-consensual sexual behaviors with Ms. Hall, thereby violating her rights and using their position to further their own personal interests.*

202.   DENIED.

*The City of La Vergne is liable as a municipality for the conspiracy[.]*

37

203.    DENIED.


*Damages*

As a direct and proximate result of the Defendants' violations of her federally protected rights, Ms. Hall has suffered . . . .

204.    DENIED.


*Ms. Hall is entitled to liquidated damages for each nonconsensual disclosure of her intimate visual depictions from Defendant Powell and Defendant McGowan pursuant to 15 U.S.C. § 6851.*

205.    DENIED.


*Ms. Hall is entitled to an award of punitive damages against Defendants Powell, McGowan, and Davis in an amount to be determined by a jury for the acts committed with malice or reckless disregard described in this Complaint.*

206.    DENIED.


## LEWIS POWELL'S OTHER DEFENSES

Defendant Powell also raises the following defenses:

207.    Despite the allegations above, Powell was not even acting under color of law at all, and in particular he was not Plaintiff Hall's supervisor. Except for that one false allegation (that he was a supervisor), the Complaint would probably fail to state any claim for relief at all. And once evidence is submitted, that claim will fail.

208.     Further, Hall has previously acknowledged, repeatedly, that her relationship with Powell was fully consensual. Her present claims to the contrary in this lawsuit are made in bad faith, thereby warranting the imposition of defense attorney's fees under 42 U.S.C. § 1988.

209.     Powell relies upon the defense of qualified immunity.

210.     Even if Powell had really violated the statute 15 U.S.C. § 6851 as alleged, the statute violates the First Amendment and is unenforceable.

211.     Along similar lines, the statute 15 U.S.C. § 6851 is unenforceable due to the doctrine of overbreadth.

212.     In addition, Congress lacked any power under the Constitution more generally — Article I Section 8, or otherwise — to enact the statute 15 U.S.C. § 6851. Most notably, the statute exceeds congressional authority under the commerce clause, especially if interpreted in the manner proposed by this Plaintiff. This Plaintiff is claiming that simply communicating by cell phone is enough to invite congressional regulation of speech, purportedly as a regulation of interstate commerce. But such speech has no economic aspect at all, and it is simply not interstate commerce. *Cf. United States v. Lopez*, 514 U.S. 549 (1995) ("The possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce."). Therefore, Congress has no right to regulate it.

213.     Further, any re-distributions of Hall's published pornography, sent within the police department, were communications conveyed in good faith to other law enforcement officers. Or else they were communications that addressed matters of public concern or interest. Either way, they are nonpunishable. *See* 15 U.S.C. § 6851(b)(4)(B) and (C).

214.     Finally, the extreme liquidated damages provision of the statute 15 U.S.C. § 6851 violates the Eighth and Fourteenth Amendments, namely as an excessive fine, and as a deprivation of liberty and property without due process. *See, e.g., Timbs v. Indiana*, 139 S.Ct. 682 (2019) (Applying Eighth Amendment to asset forfeiture laws); BWM *of North America, Inc. v. Gore*, 517 U.S. 559 (1996) (Applying Fourteenth Amendment to punitive damages award).

## <u>CONCLUSION</u>

PREMISES CONSIDERED, Powell asks that the lawsuit be denied, and that the Court award Powell's reasonable attorney's fees pursuant to 42 U.S.C. § 1988 due to the Plaintiff's bad faith in bringing the lawsuit.

Respectfully submitted,

/s/  Drew Justice
Drew Justice #29247
Attorney for Lewis Powell
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

40

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

MAEGAN OLIVIA HALL,

     *Plaintiff-CounterDefendant*

v.                               **3:23-cv-00173**

LEWIS POWELL,                   JURY DEMAND
                                      District Judge Richardson

     *Defendant-Counterplaintiff*       Magistrate Judge Holmes

---

### COUNTERCOMPLAINT OF LEWIS POWELL

---

Comes now Counterplaintiff Lewis Powell, pursuant to Fed. R. Civ. P. 13, and brings suit against Maegan Olivia Hall as follows:

1)     Counterplaintiff LEWIS POWELL was formerly a sergeant at the La Vergne Police Department. He is a citizen of Tennessee.

2)     Counterdefendant MAEGAN OLIVIA HALL was formerly an officer of the La Vergne Police Department. She is also a citizen of Tennessee. To be clear, though, she is being sued individually.

3)     During most of the year 2022, POWELL and HALL worked alongside each other at the Police Department.

4)     During the span of roughly March-May 2022, however, HALL began persistently flirting with POWELL, and pressuring him to engage in sexual relations with her.

5)     Initially, she began by talking about sex. She complained to POWELL that her own marital sex life was unsatisfying. After POWELL responded with an idea or two about how

she might spice things up with her husband, HALL asked if POWELL could *demonstrate*. That way, she said that she would know how to please her husband.

6)       POWELL was hesitant to take HALL up on her offer of sex, especially given that he himself was already married. Initially he just said, "No, thank you," in a somewhat playful tone.

7)       Nonetheless, around that same time in the Spring of 2022, POWELL had already begun experiencing temporary problems in his own marriage. Partly as a result of that unfortunate situation (which has since resolved), his resolve was weakened and he began to be tempted.

8)       Toward the end of April 2022, HALL began texting sexual messages to POWELL. Her continuing temptations in this manner continued for multiple weeks.

9)       Eventually, at HALL's suggestion, POWELL began meeting with HALL several times, in private, on their days off. For example, they met up at a park. Other times they would simply hang out in HALL's car.

10)       Ultimately, POWELL did engage in consensual oral sex with HALL, even though both parties were already married.

11)       However, Powell immediately regretted this act of treachery.

12)       Consequently, in approximately May 2022, POWELL began trying to break things off amicably with HALL, saying that he loved his wife.

13)       Nonetheless, HALL persisted in trying to entrap him back into a relationship.

14)       HALL (who is white) appeared to have some sort of fetish for POWELL (who is black) based on his race. On multiple occasions, while at work, she told him to put his "big black

dick" in her mouth and "gag" her with it. When POWELL held firm, saying that he wanted to be with his own wife instead, HALL said that he must be a homosexual.

15)     Eventually, though HALL seemed to take the hint and move on. Hence, the relationship ended in approximately May or June 2022.

16)     Around that same time, HALL appeared to be pursuing sexual relationships with multiple other officers, anyway. POWELL simply let them have her.

17)     After this breakup, the relationship between the two parties became mostly professional in nature.

18)     Nonetheless, due to HALL's deteriorating mental state and increasingly bizarre acts — culminating in her own three-day commitment to a mental asylum — both HALL and POWELL (among others) eventually came to be investigated by the La Vergne Police Department in December 2022.

19)     During repeated interviews, HALL said that she had been in a relationship with POWELL, and that the relationship was consensual.

20)     More specifically, she appeared to say that she was *still* in a relationship with Powell. For example, she said in one interview, "Me and Sergeant Powell have a thing."

21)     In reality, they did not still have a thing. Their adulterous affair had been over for roughly half a year.

22)     Ultimately, both HALL and POWELL were fired after the investigation, as were multiple other officers, whether for supposed sexual conduct or related allegations.

43

23)     In late February 2023 (exact date unknown), HALL appeared on News Channel 5, alongside her attorney. This was an attorney with whom she was suing POWELL, other officers, and the City of La Vergne. While on television, she made allegations against POWELL.

24)     Although the broadcast did not state POWELL's name, his identity was readily apparent from the context, especially given that POWELL's picture was posted, and given that her lawsuit (published online) filled in any gaps left by the television interview.

25)     The broadcast aired on February 27, 2023 and on March 01, 2023. The whole video and most of the accompanying text dialogue were also published online at newschannel5.com.

26)     On television, HALL alleged that POWELL had sexually harassed her. Further, she alleged that he had engaged in non-consensual physical and sexual contact with her — although she apparently declined to call it "rape." And she alleged that POWELL had acted with other high-up officers at the Police Department to victimize her sexually.

27)     The allegations of sexual harassment, sexual abuse, sexual assault, and corruption were all defamatory.

28)     Admittedly, POWELL's name had already been tarnished earlier, namely by his own termination and the publicity in connection with it. But for the most part, HALL's publicized allegations against him were new.

29)     In other words, the Police Department had never made any accusations against POWELL of sexual assault, non-consensual sexual or physical contact, public corruption for the purpose of carrying out sexual abuse, or anything along those lines. But HALL did make those accusations. And she did it on television.

30) HALL's allegations were false.

31) HALL also knew that they were false. (Or at minimum, she was reckless with regard to their truth or falsity, the required legal standard.)

32) As a result of the News Channel 5 broadcast(s), POWELL has suffered damage to his reputation, and he has also suffered emotional distress, loss of enjoyment of life, and loss of income.

33) In addition, HALL's guilty state of mind in uttering the false words was sufficient to warrant the imposition of punitive damages.

## CAUSE OF ACTION

### COUNT I
### DEFAMATION

### TENNESSEE COMMON-LAW

*(Against Meagan Hall)*

34) The allegations in the other sections are incorporated by reference.

35) By recklessly or knowingly expressing false and defamatory accusations on television about the Plaintiff's character, Defendant Meagan Hall is liable for the tort of defamation.

## JURISDICTION

36) This Court has full jurisdiction and venue, as already discussed in Maegan Hall's own complaint, and specifically as part of the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## **RELIEF SOUGHT**

PREMISES CONSIDERED, Counterplaintiff Lewis Powell prays for the following relief:

i)       A jury trial,

ii)      Compensatory damages of $200,000,

iii)     Punitive damages, in an additional and reasonable amount as set by the trier of fact,

iv)     Reasonable attorney's fees, per 42 U.S.C. § 1988,  and

v)      Any additional relief that the Court deems proper, such as the taxation of costs to the Counterdefendant.

Respectfully submitted,

/s/  Drew Justice
Drew Justice #29247
Attorney for Lewis Powell
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

### **Certificate of Service**

The undersigned lawyer certifies that this April 05, 2023, he has delivered a copy of this filing via the Court's e-filing system to Wesley Clark, 2901 Dobbs Ave, Nashville, TN 37204; Kristin Berexa, 12 Cadillac Drive, Suite 480, Brentwood, TN 37027; Jay Jackson, 106 East College Street, Murfreesboro, TN 37133;  and Isaac Conner, 1720 West End Ave, Suite 300, Nashville, TN 37203.

/s/  Drew Justice
Drew Justice #29247